**CHALK, Commissioner of Game and Inland Fisheries, et al. v. UNITED STATES.**

**No. 4627.**

Circuit Court of Appeals, Fourth Circuit.

Aug. 30, 1940.

J. Y. Jordan, Jr., of Asheville, N. C., and L. O. Gregory, Asst. Atty. Gen. of North Carolina (Harry McMullan, Atty. Gen. of North Carolina, and J. M. Horner, Jr., of Asheville, N.C., on the brief), for appellants.

Marvin J. Sonosky, of Washington, D. C., Atty., Department of Justice (Norman M. Littell, Asst. Atty. Gen., James O. Carr, U. S. Atty., of Wilmington, N. C., John Hall Manning, Asst. U. S. Atty., of Raleigh, N. C., and Charles R. Denny, of Washington, D. C., Atty., Department of Justice, on the brief), for appellee.

Peyton Randolph Harris, of New York City, for Campfire Club of America, amicus curiae.

M. M. Redden, of Hendersonville, N. C., for North Carolina Hunters' and Fishers' Ass'n, Inc., amicus curiae.

Thomas Read, Atty. Gen. of Michigan, for the State of Michigan, amicus curiae.

Before PARKER, SOPER, and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is a civil suit brought by the appellee, United States of America, here referred to as the plaintiff, in March, 1939, in the District Court of the United States for the Eastern District of North Carolina, at Raleigh, against the appellants, J. D. Chalk, Commissioner of Game and Inland Fisheries, of the State of North Carolina, and E. B. Kugler, J. A. Bradshaw, J. H. Longshore, Seaman S. Whittaker and C. N. Mease, State Officials under the direction and supervision of the said Chalk, here referred to as the defendants. The object of the suit was to permanently enjoin and restrain the defendants, and anyone acting under them in their official capacity, from enforcing or attempting to enforce the state-wide game laws of the State of North Carolina with respect to the game, birds and fish on the lands of the plaintiff known as the Pisgah National Forest and the Pisgah National Game Preserve, located in the Western part of the State of North Carolina.

Motion was made by the defendants to dismiss the suit for want of jurisdiction, which motion was denied and the defendants answered. Thereafter, the plaintiff instituted a second suit against the same parties in the same Court upon substantially identical allegations in the complaint, with the exception that it set up a determination and authorization made by the Secretary of Agriculture in September, 1939, and seeking the same relief prayed for in the original suit.

The defendants filed a motion, in the nature of a plea in bar, to dismiss the second action, on the grounds that a prior suit was pending and in October, 1939, an agreement was reached between the litigants whereby the plaintiff was to dismiss the second suit with the privilege of filing an amended complaint in the suit first brought. Such amended complaint was filed containing an allegation setting up the determination and authorization made by the Secretary of Agriculture, of the United States, with respect to the said Pisgah National Game Preserve, determining that the deer herd in said Game Preserve was damaging and injuring the land and forest and authorizing the diminishing of said herd by hunting and trapping under such conditions as the Chief of the Forest Service might find necessary.

Defendants answered the amended complaint and requested that a jury trial be had on the issue as to whether the lands and forest of the plaintiff were being damaged by the deer thereon as alleged by the plaintiff.

The cause came on for trial on November 6, 1939, and a jury was impaneled to pass upon the one issue of fact raised by the pleadings.

At the close of plaintiff's evidence defendants moved for a directed verdict, which motion was denied. At the close of all the evidence the defendants again moved for a directed verdict. The Court thereupon instructed the jury that "from the evidence in the case, the opinion of the Court with respect to the application of the facts to the law and the law to the facts is such that if the jury should return a verdict

contrary to the Court's determination of the value of the evidence, the Court would not feel in conscience bound to follow it", and thereupon the jury was discharged, and the Court found as a fact that "the land, forest and vegetative cover comprising said Game Preserve have been and are being severely damaged by the deer on said Preserve."

A decree was entered granting the relief prayed for by the plaintiff and enjoining the defendants from interfering with the reduction of the deer herd on the lands in question, under the direction of the Secretary of Agriculture of the United States. From this action this appeal was brought.

The State of Michigan, the Camp Fire Club of America and the North Carolina Hunters' and Fishers' Association upon petition were each granted leave to appear in this Court as amicus curiae and filed briefs in support of the defendants' contention.

Two questions are involved in this appeal: First, whether the deer herd was causing serious damage to the Pisgah National Game Preserve and second, whether the United States, without regard to State Laws, may protect the Game Preserve in question against damage caused by the excessive number of deer in a herd on such Preserve.

Pursuant to the Weeks Act of March 1, 1911, c. 186, 36 Stat. 961, and with the consent of the State of North Carolina (N.C.Laws 1901, c. 17), the plaintiff acquired approximately 150,000 acres of land in western North Carolina for the Pisgah National Forest.

In the year 1915 the Legislature of the State of North Carolina passed the following Act with respect to the control of the plaintiff over the game animals, birds and fish on the lands acquired by the United States, in the State:

N.C.Laws 1915, c. 205, N.C.Code Ann. (1939), sec. 2099:

"An Act To give the consent of the State of North Carolina to the making by the Congress of the United States, or under its authority, of all such rules and regulations as in the opinion of the Federal Government may be needful in respect to game animals, game and non-game birds, and fish on lands, and in or on the waters thereon, acquired or to be acquired by the Federal Government in the western part of

North Carolina for the conservation of the navigability of navigable rivers.

"Whereas, the Government of the United States, with the consent of the General Assembly of the State of North Carolina, has acquired and will acquire areas of forested land in the western part of said State for the purpose of conserving the navigability of navigable streams, and said lands and waters thereon are and will be stocked, naturally and artificially, with game animals, game and non-game birds, and fish: and

"Whereas, in order adequately to enjoy and protect the occupancy and use of said areas, it is important that the United States be fully authorized to make all needful rules and regulations in respect to such animals, birds, and fish: Therefore,

"The General Assembly of North Carolina do enact:

"Section 1. That the consent of the General Assembly of North Carolina be, and hereby is, given to the making by the Congress of the United States, or under its authority, of all such rules and regulations as the Federal Government shall determine to be needful in respect to game animals, game and non-game birds, and fish on such lands in the western part of North Carolina as shall have been, or may hereafter be, purchased by the United States under the terms of the Act of Congress of March first, one thousand nine hundred and eleven, entitled 'An act to enable any State to cooperate with any other State or States, or with the United States, for the protection of the watersheds of navigable streams, and to appoint a commission for the acquisition of lands for the purposes of conserving the navigability of navigable rivers,' (Thirty-sixth United States Statutes at Large, page nine hundred and sixty-one), and acts of Congress supplementary thereto and amendatory thereof, and in or on the waters thereon."

▆▆ Acceptance of such a grant, as is made by this Act of 1915, may be presumed. Fort Leavenworth Railroad Company v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264; Silas Mason Co. et al. v. Tax Commission, 302 U.S. 186, 58 S.Ct. 233, 82 L.Ed. 187. However, the amendment of August 11, 1916, c. 313, Sec. 1, 39 Stat. 446, 476, 16 U.S.C.A. § 683, to the Weeks Act, constitutes an acceptance of the cession of jurisdiction made by the Act of the North Caro-

lina Legislature of 1915. That amendment authorized the establishment of Game Preserves and prohibited the taking of wildlife on such Preserves except under rules and regulations made by the Secretary of Agriculture. The debate in the Senate of the United States on the passage of this amendment (53 Cong.Rec. 10327) shows that the amendment was passed in view of and in response to the Act of the North Carolina Legislature and was an acceptance of the cession of jurisdiction. On October 17, 1916, by proclamation of the President of the United States, an area of approximately 96,000 acres of land lying within the boundaries of the Pisgah National Forest was declared to be the Pisgah National Game Preserve.

During the period in which the Pisgah National Forest and the Game Preserve were established, and the Act of the North Carolina Legislature of 1915 was passed, there was no general game law in North Carolina and not until 1933 and 1935 was there any such law. In the meantime the herd of deer on the Game Preserve had increased to such an extent that, in the opinion of the officials of the United States Government, it was damaging the lands of the forest to such an extent that it became necessary to reduce the herd by hunting and by trapping and shipping the deer. After the passage of the general game laws in North Carolina there arose some friction between the State officials and the employees of the United States, in charge of the Game Preserve, with regard to the hunting and trapping of the deer, but for several years matters were arranged by agreement. In 1939 the Legislature of North Carolina passed an Act (Public Laws of 1939, c. 79) expressly prohibiting the trapping, hunting or transportation of any living animal game or non-game, game or non-game birds, and fish by anyone on the lands that had been, or might hereafter be, purchased by the United States in the State of North Carolina except in accordance with the Game Laws of North Carolina passed in 1935.

The officials of North Carolina asserted jurisdiction over the hunting, trapping and transportation of any of the deer on the Pisgah National Game Preserve and there were prosecutions by the State against persons hunting the deer under the authority of the United States officials, and against the officials themselves.

The evidence shows that at one time the deer herd numbered in the neighborhood of seven thousand (7,000) and at the time of the hearing below the best estimate was that the herd numbered five thousand. There was evidence to the effect that the Game Preserve and the Forest could not support, without damage, more than two or three thousand deer.

On the first question as to whether the deer herd was severely injuring the Forest and Game Preserve: a study of the evidence leads us to the conclusion that the judge below was clearly right in his finding of fact, that the land, forest and vegetative cover comprising said Game Preserve was being severely damaged by the deer herd. The evidence on behalf of the plaintiff on this question was much more persuasive than that offered on behalf of the defendants and the reasons given for the conclusions reached by the plaintiff's witnesses were much more convincing than those given by defendants' witnesses.

■ Findings of a trial court on questions of fact will not be set aside unless clearly erroneous. Federal Rules of Civil Procedure, Rule 52(a), 28 U.S.C.A. following section 723c. Guilford Const. Co. v. Biggs, 4 Cir., 102 F.2d 46.

■ As to the second question: whether, the fact being established that the deer herd was damaging the Game Preserve, the United States, without regard to State Laws, may protect its property from such damage, we are of the opinion, under the circumstances here presented, that the plaintiff has that right.

Having purchased the lands in question, with the consent of the State of North Carolina, and having been encouraged to go ahead with the project of the National Forest, the right of the plaintiff to protect its lands and property from severe damage, cannot be doubted. On this point we consider the decision of the Supreme Court in Hunt v. United States, 278 U.S. 96, 49 S.Ct. 38, 73 L.Ed. 200, as controlling the issues here. In that case the Court said: "The direction given by the Secretary of Agriculture was within the authority conferred upon him by act of Congress. And the power of the United States to thus protect its lands and property does not admit of doubt, Camfield v. United States, 167 U.S. 518, 525, 526, 17 S.Ct. 864, 42 L.Ed. 260; Utah Power & Light Co. v.

United States, 243 U.S. 389, 404, 37 S.Ct. 387, 61 L.Ed. 791; McKelvey v. United States, 260 U.S. 353, 359, 43 S.Ct. 132, 67 L.Ed. 301; United States v. Alford, 274 U.S. 264, 47 S.Ct. 597, 71 L.Ed. 1040, the game laws or any other statute of the state to the contrary notwithstanding."

In addition to the inherent power of the Government to protect its property we have the power expressly ceded to the plaintiff by the State of North Carolina in the Act of 1915, above quoted. In this Act the State ceded exclusive jurisdiction over the control of wild life in the Pisgah Game Preserve to the Federal Government and such a cession of jurisdiction for a limited purpose is exclusive as to that purpose, while not necessarily a .cession of the right to legislate for all purposes. In compliance with the provisions of the North Carolina Act of 1915, the United States, through the determination and authorization of the Secretary of Agriculture, made in September, 1939, set up such rules and regulations as the Federal Government deemed needful with respect to the deer herd.

"The United States has large bodies of public lands. These properties are used for forests, parks, ranges, wild life sanctuaries, flood control, and other purposes which are not covered by Clause 17. * * * it may be deemed important or desirable by the national government and the state government in which the particular property is located that exclusive jurisdiction be vested in the United States by cession. * * * the respective sovereignties should be in a position to adjust their jurisdictions. There is no constitutional objection to such an adjustment of rights." Collins et al. v. Yosemite Park & Curry Co., 304 U.S. 518, 58 S.Ct. 1009, 1014, 82 L.Ed. 1502.

The State of North Carolina having granted to the plaintiff exclusive jurisdiction over the wild life in the Game Preserve, the State could not, by the passage of any General Game Law, in any way affect the right of the plaintiff under the cession.

It is contended that the trial court erred in admitting in evidence, over the objection of the defendants, the determination and authorization of the Secretary of Agriculture of September 9, 1939. The Secretary of Agriculture had the authority to make such determination and authorization and it was clearly admissible under the agreement entered into between the parties, before the Court, and was proper to show that those acting for the plaintiff were proceeding under the orders of an official of the United States authorized to issue the orders.

The plaintiff has the unquestioned right to reduce the deer herd, damaging its property, without regard to the State Game Laws of North Carolina, and the action of the judge below in granting the permanent injunction was correct.

Affirmed.