UNITED STATES v. MAYO et al.

No. 31.

District Court, N. D. Florida.

Oct. 30, 1942.

556

outline of the program is set out in the complaint filed herein, and the attached affidavits. The fertilizer is purchased by the government from commercial manufacturers, inspected by the government as to suitability for the purpose for which it is to be used. It is then shipped under government bills-of-lading to county agricultural conservation associations for the purpose of delivery to the farmers. This distribution is for the purpose of facilitating the planting of such nitrogen-bearing crops as would increase the nitrogen content of the soil and thereby compensate for the critical shortage of nitrogen due to its use in munitions required by the war emergency.

Nitrogen, being unavailable for fertilizer purposes, can only be supplied by these nitrogen growing crops. It, therefore, becomes a question of either the diversion of nitrogen from war needs, or a reduction of the agricultural production, both of which are necessary because of these requirements of the armed forces, the needs of our allies, and the domestic demands. The program is nation wide. The action of the defendants complained of prior to the issuance of the temporary restraining order, had halted the distribution of this very widely needed fertilizer.

The Florida Commercial Fertilizer Law, Section 576.11, requires an inspection fee to be paid by every manufacturer or agent of commercial fertilizer. Section 576.13 refers to manufacturer and importer of, or dealer in fertilizers. Since the rule is that the general words of a statute do not include the government or affect its rights unless the construction be clear and undisputable upon the text of the act (Nardone v. United States, 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314; United States v. Fox, 94 U.S. 315, 24 L.Ed. 192; United States v. Cooper Corporation, 312 U.S. 600, 61 S.Ct. 742, 85 L.Ed. 1071), the conclusion could be reached that by this statute of Florida the legislature had no intention of affecting the property of the Federal Government.

There is abundant authority for the holding that a State under the exercise of the police power may pass regulatory acts providing for inspection fees, but that is not the question here. The one and only question to be determined is whether or not Federal transactions are immune from such State regulations. It seems to

Francis M. Shea, Asst. Atty. Gen., George Earl Hoffman, U. S. Atty., of Pensacola, Fla., W. B. Watson, Jr., Asst. U. S. Atty., of Gainesville, Fla., Sidney J. Kaplan, Sp. Asst. to the Atty. Gen., and Martin Norr, Atty., Department of Justice, for plaintiff.

J. Tom Watson, Atty. Gen. of Florida, Joseph E. Gillen and Fred M. Burns, Asst. Attys. Gen. of Florida, H. E. Carter, of Tallahassee, Fla., and William C. Pierce, of Tampa, Fla., for defendants.

Before McCORD, Circuit Judge, and LONG and WALLER, District Judges.

LONG, District Judge.

The United States is engaged in the distribution of fertilizer to the farmers of Florida and in other States as a part of a soil conserving program developed by the government to carry out the purposes of the Soil Conservation and Domestic Allotment Act, 16 U.S.C.A. § 590a et seq. The

be well settled as a matter of law that the police power of a State does not extend to the United States, its property or transactions, and that such Federal property and transactions are immune from State regulations, and State Statutes are invalid under the Supremacy Clause of the Constitution (Article VI, Clause 2). State of Ohio v. Thomas, 173 U.S. 276, 19 S.Ct. 453, 43 L.Ed. 699 (cited with approval in Stewart & Company v. Sadrakula, 309 U. S. 94, 60 S.Ct. 431, 84 L.Ed. 596, 127 A.L. R. 821); State of Arizona v. State of California, 283 U.S. 423, 51 S.Ct. 522, 75 L. Ed. 1154. The United States may perform its functions without conforming to the police regulations of a State. Johnson v. State of Maryland, 254 U.S. 51, 41 S.Ct. 16, 65 L.Ed. 126; Hunt v. United States, 278 U.S. 96, 49 S.Ct. 38, 73 L.Ed. 200; Chalk v. United States, 4 Cir., 114 F.2d 207; Id., 312 U.S. 679, 61 S.Ct. 449, 85 L.Ed. 1118; Posey v. Tennessee Valley Authority, 5 Cir., 93 F.2d 726.

The authority of State laws or their administration may not interfere with the carrying out of a national purpose. Where enforcement of the State law would handicap efforts to carry out the plans of the United States, the State enactment must, of course, give way. Stewart & Company v. Sadrukula, 309 U.S. 94, 60 S. Ct. 431, 84 L.Ed. 596, 127 A.L.R. 821.

The defendants rely chiefly upon the case, State of Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615.

All that is necessary to convince one that the King & Boozer case is not applicable here is to parallel this case with the case of Federal Land Bank v. Bismarck Lumber Company, 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65, rendered the same day as the King & Boozer case. In King & Boozer the State Law operated only on the private independent contractor and with respect to its own property. In the Federal Land Bank case, which as stated above was rendered the same day as the case relied upon by the defendants, the State of North Dakota sought to impose its sales tax from a dealer directly to the Federal agent and instrumentality. The incident of the tax was, by compulsion of the State law rather than by contract, directly on the purchaser who in that instance was a Federal instrumentality. The Supreme Court accordingly held the levy invalid as in violation of a sovereign immunity of the Federal government. The Florida statute here involved, as applied by the defendants, operates directly on the United States, and it would seem that the case of Federal Land Bank v. Bismarck Lumber Company is controlling in this instance. The Florida act is legislation for the regulation of the fertilizer industry, and not legislation for raising revenue, and the fees required are only one aspect of a total scheme of regulation which cannot be validly applied to the United States, its property or transactions. The property of the United States is immune from seizure, even to collect a valid tax, and certainly this Federal property is immune from State seizure in the case at bar even to collect a valid fee.

WALLER, District Judge (dissenting).

The Florida Fertilizer Inspection Statute is a valid exercise of the police power of the State to protect the farmers against the sale of inferior or fraudulent fertilizer.

The Federal Government has enacted no statute for the protection of the purchasers of fertilizer in Florida. Under the Constitution all power not granted to the Federal Government was reserved to the States. Moreover, the power of the State to levy a reasonable inspection fee is expressly provided in Section 10 of Article I:

"No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, *except what may be absolutely necessary for executing it's inspection Laws: * * *.*" (Italics supplied.)

The right of the State to levy an inspection tax is not merely implied but expressly conferred by the Constitution.

The Congress could not take the power away from the State to levy a reasonable inspection tax. If Congress cannot do so, it follows that the Department of Agriculture cannot do so.

The State is supreme and sovereign in the exercise of its reserved powers. The right to levy an inspection tax is expressly reserved in the State. Therefore, the State is supreme in the exercise of this power.

Congress is supreme in the powers delegated to it, but the right to regulate the inspection of fertilizer or to regulate agriculture was not expressly delegated to the Congress. Whatever power Congress has to regulate agriculture is under the general welfare clause of the Constitution,

but the promotion of the general welfare does not call for the striking down of a constitutional power of a State. It is more important that the relations between the State and Federal Governments under our dual system be preserved and left uninfringed than refraining from deducting from a gift to the farmer a reasonable inspection fee levied by the State under the power of the Federal Constitution.

I agree with the majority Court that the State was probably without power to seize property of the United States, to wit, the fertilizer in question, but I consider the seizure as purely procedural. The substantive question is whether or not the Department of Agriculture has the right to procure fertilizer for farmers and thereby permit them to escape the payment of an inspection tax, whereas the vast majority of farmers who are not the recipients of this gratuity will have to pay an inspection tax. It is idle to say that this inspection fee is a burden upon the Federal Government for the reason that since it is a gratuity the Government can, without loss to itself, deduct the amount of the inspection tax from the amount of the benefit to be paid to the farmer, of which the fertilizer distribution is but an advancement.

I do not consider that the inspection fee is a tax, but if it be a tax it is a nondiscriminatory tax and compels no burden to be cast upon the Federal Government.

If it be a tax there is no implication that Congress intended to grant immunity from the payment of the tax. There is no immunity from taxation granted in the Federal Constitution. Immunity proceeds only from the express language of a statute or implications therein. An implied immunity can only be ascertained from the intention of Congress, and the nature and effect of the burden placed upon the Government. See Graves v. People of State of New York ex rel. O'Keefe, 306 U.S. 466, 468, 59 S.Ct. 595, 83 L.Ed. 927, 120 A. L.R. 1466; State of Alabama v. King & Boozer, 314 U.S. 1, 62 S.Ct. 43, 86 L.Ed. 3, 140 A.L.R. 615; Curry v. United States, 314 U.S. 14, 62 S.Ct. 48, 86 L.Ed. 9.

In the case of Graves v. People of State of New York, ex rel. O'Keefe, supra, the Court, referring to the decision in the case of Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969, 82 L.Ed. 1427, said: " * * * it was there pointed out that the implied immunity of one government and its agencies from taxation by the other *should,* as a principle of constitutional construction, *be narrowly restricted.* For the expansion of the immunity of the one government correspondingly curtails the sovereign power of the other to tax, * * *." (Italics supplied.) [306 U.S. 466, 59 S.Ct. 600, 83 L.Ed. 927, 120 A.L.R. 1466].

It seems to me that in view of the power of the State expressly conferred by the Federal Constitution to levy an inspection tax, it could not be implied, in the absence of express language in the statute, that Congress intended to exempt the fertilizer in question from the provisions of the valid inspection statute of the State of Florida.

Entertaining the above views I am forced to dissent from the findings of fact and conclusions of law of the majority of the Court.