MOISE, Justice.
These consolidated suits are for the recovery of taxes paid the City of New Orleans and the State of Louisiana under protest.
The cases were tried on stipulation of facts and decided in favor of plaintiff, International Business Machines Corporation; recovery being granted against the defendant, Lionel G. Ott, Commissioner of the Department of Public Finance and Tax Collector for the City of New Orleans, in the sum of $4,491.17, and against the defendant, George Montgomery, State Tax Collector for the City of New Orleans, in the sum of $1,899.12. Defendants have appealed from these judgments.
The basic question posed is — Can the State of Louisiana, or a subdivision thereof, levy an ad valorem tax on personal property located on sites over which exclusive jurisdiction has been ceded to the United States?
The two subsidiary questions raised by the City and the State deal with the taxability of property on sites leased to the United States, and on sites acquired by the United States subsequent to the passage of the Federal Act of 1940, 40 U.S.C.A. § 255.
There must be ever present in our judicial conscience the consequences and results of our decisions. The application of the principle which grants or denies the right of the State to tax requires the observance of close distinctions in each case. Under our dual system of government, we must maintain the freedom of each sovereignty. However, we must be ever mindful of the principle that the National Government must be free from such interference by the City or State as would impair its effective use of property acquired for Federal purposes. James Stewart & Co., Inc., v. Sadrakula, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596; United States v. Unzeuta, 281 U.S. 138, 50 S.Ct. 284, 74 L.Ed. 761; S. R. A., Inc., v. State of Minnesota, 327 U.S. 558, 66 S.Ct. 749, 90 L.Ed. 851. Therefore, the State or a municipality cannot levy nor assess a tax which interferes with a Federal function.
International Business Machines Corporation leased to the United States Government certain electrical appliances, which were placed on the following property acquired by the United States:
1. The New Orleans Port of Embarkation, acquired on August 24, 1928 from the City of New Orleans and. the Public Belt Railroad Commission. Here is located the United States Department of Commerce Weather Bureau.
2. The New Orleans Port of Embarkation is also occupied by the Fi *671 nance Officer of the United States Army.
3. The Customs House Building, New Orleans, Louisiana, title having been acquired by the United States by donation on January 27, 1848. Here is located the U. S. Civil Service Commission, Tenth Civil Service Region.
4. The United States Navy Repair Base, Algiers, Louisiana, title having been acquired by judgments of expropriation in 1903.
5. A portion of ground at the Foot of Prytania Street, New Orleans, ■Louisiana, occupied under an agreement with the Board of Levee Commissioners of the Orleans Levee District in 1914, which permits occupancy without cost. The property is presently used as the United States Engineering Depot.
Plaintiff contends that the State of Louisiana has yielded “exclusive jurisdiction” over the above properties and has agreed that the same shall be exempt from all taxation, assessments or charges levied under the authority of the State, as shown by the following:
The United States Constitution, Article I, § 8, Clause 17, provides:
“The Congress shall have Power * * * To exercise exclusive Legislation in all Cases whatsoever, over such District * * * and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings”.
Section 2 of Act 12 of Louisiana’s Legislature for the year 1892 provides:
“The United States may enter upon and occupy any land which may have been, or may be purchased or condemned, or otherwise acquired, and shall have the right of exclusive jurisdiction over the property so acquired during the time that the United States shall be or remain the owner thereof for all purposes, except the administration of the criminal laws of said State, and the service of civil process of said State therein, and shall hold the same .exempt from all State, parochial, municipal or other taxation.” (Italics ours.)
Title 40 of the United States Code An=notated, § 255, reads:
“ * * * Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Gov- *673 eminent may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted.” (Italics ours.)
It would be a brutum fulmen to apply this section to movables leased to the United States (in this case), which is in effect the obtaining of the consent of the State to lease the property involved for its public purposes.
Our LSA-Revised Statutes of 1950, 52:1, read:
“The United States, in accordance with the seventeenth clause, eighth section of the first article of the Constitution of the United' States, may acquire and occupy any land'in Louisiana required for the purposes of the federal government. The United States shall have exclusive jurisdiction over the property during the time that the United States is the owner or lessee of the property. The property shall be exempt from all taxation, assessments, or charges levied under authority of the state.
“The state may serve all civil and criminal process issuing under authority of Louisiana on the property acquired by the United States.”
Act 31 of Louisiana’s Legislature of 1942 amended Act 12 of 1892. It reads:
“Section 1. Be it enacted by the Legislature of Louisiana, That the consent of the State of Louisiana is hereby given, in accordance with the seventeenth clause, eighth section, of the first article of the Constitution of the United States, to the acquisition by the United States, by purchase, condemnation or otherwise, of any land in this State required for sites for forts, magazines, arsenals, dockyards, and other needful buildings, or for any other purposes of the Government of the United States. (Italics ours.)
“Section 2. That the United States may enter upon and occupy any land in the State of Louisiana which it has heretofore acquired, or may hereafter acquire, by purchase, condemnation, lease or otherwise, required for sites *675 for forts, magazines, arsenals, dockyards, and other needful buildings, or for any other purposes of the Government of the United States, and shall have the right of exclusive jurisdiction over the property so acquired, during the time that the United States shall he or remain the owner or lessee thereof, for all purposes, except that the State retains the right to serve therein all civil and criminal process issuing under authority of the said State, and all lands so held and title to which is vested in the United States shall be and remain exempt from all state, parochial, municipal or other taxation, assessment or other charges which may be levied or imposed by or under authority of this State.”
From the constitutional and statutory provisions above referred to, it is clear that the property located on land acquired by the United States in these proceedings is no longer subject to assessment for state and local taxes.
The next question presented is the status of the privately owned machinery located on this tract of land during the year 1948, with respect to its assessment for such taxes. This identical point was passed on by the United States Supreme Court in the case of Surplus Trading Co. v. Cook, 281 U.S. 647, 50 S.Ct. 455, 458, 74 L.Ed. 1091, a suit by the Sheriff and Collector of Taxes of Pulaski County, Arkansas, to enforce payment by the Surplus Trading Company of state and local taxes on certain personal property owned by it. The company resisted payment of the taxes on the ground that the property on which the assessment was laid was located within' Camp Pike, an army mobilization, training and supply station of the United States located on land purchased by the United States with the consent of the Legislature of Arkansas. The property attempted to be taxed consisted of a large quantity of woolen blankets which the defendant, a New York concern, purchased from the United States at an advertised sale a few days before the day fixed by the state law for listing personal property for taxation, and which in much the greater part was on that day in the army storehouses within Camp Pike awaiting shipment therefrom.
In discussing the liability of this personal property to assessment for state and local taxes, the court quoted from the case of Ft. Leavenworth R. Co. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264, as follows:
“ ‘When the title is acquired by purchase by consent of the legislatures of the states, the federal jurisdiction is exclusive of all state authority. This follows from the declaration of the constitution that congress shall have “like authority” over such places as it has over the district which is the seat of government; that is, the power of “exclusive legislation in all cases *677 whatsoever.” Broader or clearer language could not be used to exclude all other authority than that of congress.’
“ * * * ‘These authorities are sufficient to support the proposition, which follows naturally from the language of the* constitution, that no other legislative power than that of congress can be exercised over lands, within a State purchased by the United States with her consent for one of the purposes designated; and that such consent, under the constitution, operates to exclude all other legislative authority.’ ”
The conclusions of the Court on this point are concisely expressed in the syllabus, from which we quote as follows:
“Private personal property located within an Army camp, the lands for' which were acquired by the United States with the consent of the legisla- ’ ture of the state in which such lands are situated, cannot be subjected to state taxation, in view of the provisions of article 1, § 8, cl. 17, of the Constitution, giving Congress exclusive legislative authority over places so acquired.”
The City and State have cited tax cases, gross receipt tax cases, and unrelated cases, but the indisputable fact is that the Cook case, supra, has. never been overruled and is the law of today. The Cook case is this case, and the cases cited by the defendants are the other cases. See also, Coleman Bros. Corporation v. City of Franklin, D.C., 58 F.Supp; 551, certiorari denied, 328 U.S. 844, 66 S.Ct. 1026, 90 L.Ed. 1618.
The City of New Orleans contends that the case of Silas Mason Company v. Tax Commission of State of Washington, 302 U.S. 186, 58 S.Ct. 233, 82 L.Ed. 187, is decisive of its position. The Silas Mason case and the present case are about as far apart as the poles of the earth.
The Silas Mason case and the case of Murphy Corporation v. Fontenot, 225 La. 379, 73 So.2d 180, are affiliated circumstances. We cannot make a distinction between these two cases in principle. If we attempted to do so, the distinction would be one without a difference.
In the Silas Mason case Congress of the United States expressly ratified the agreement of the parties, and by such ratification, as stated by the Court, it consented and acquiesced in the State levying and collecting the tax.
In the Murphy case the same principle is invoked as to non-interference of any governmental function. The property was not needed or used for governmental purposes, and the lease was expressly made and confected. The Government separated the property from its property and gave the lessee full dominion and control to explore the land for fugitive oil. Naturally *679 we recognized under those circumstances, •as the Court did in the Silas Mason case, the right of the State to tax.
Site Number Six, on which these leased •machines were used, is a portion of ground on Franklin Avenue and Lake Pontchartrain, New Orleans, Louisiana, which was .acquired by the United States by fee simple title in 1942 for use by the War Assets Administration of the United States Government. The City and State contend that under 40 U.S.C.A. § 2SS, supra, the Federal Government has never accepted jurisdiction of this site. The defendants have lost sight of Act 31 of 1942, supra, which cedes jurisdiction to the United States.
Site Number Seven, on which the leased machines were used, relates to space occupied by the United States Department of Agriculture in the Masonic Temple, under an unrecorded lease with the Masonic Temple. We do not-have the lease before us. We do not know whether it is written or verbal, nor do we know any of its terms. Out of an abundance of precaution, this case, insofar as it relates to this particular site, should be remanded to the district court in order to get the available information.
A law prescribes for the future. It usually has no retrospective operation, nor can it impair the obligations of a contract. We are admonished by the LSA-Civil Code of Louisiana to make no interpretation in any suit that would bring about absurd consequences.
If, in the future, the City and State could obtain judgments allowing the tax, they would then have the power to execute their judgments on the property taxed. This would mean the seizing and the selling of the property in the hands of the United States Government and would lead to absurd consequences; in that, it would be contrary not only to express law, but to the natural law that the lesser sovereignty is superior to the greater.
Since the appeal of the State Tax Collector does not involve an amount exceeding $2,000, it must be transferred to the Court of Appeal for the Parish of Orleans, under the ruling in the case of State Farm Mutual Automobile Insurance Company v. Ott, 221 La. 1061, 61 So.2d 872.
For the reasons assigned, the judgment of the trial court, in the case of International Business Machines Corporation v. Lionel G. Ott, Commissioner of the Department of Public Finance and Tax Collector for the City of New Orleans, No. 284-307 of the Docket of the Civil District Court for the Parish of Orleans, is affirmed as to the six sites first enumerated; and, as to the seventh site, the case is remanded to the Civil District Court for the Parish of Orleans for further evidence in accordance with the views herein expressed.
The appeal in the case of International Business Machines Corporation v. George Montgomery, Jr., State Tax Collector for the City of New Orleans, No. 287-900 of *681 the Civil District Court for the Parish of Orleans, is ordered transferred to the Court of Appeal for the Parish of Orleans, pursuant to the provisions of Act No. 19 of 1912, LSA-Revised Statutes 13 -.4441; the records to be filed in the Court of Appeal for the Parish of Orleans within thirty days from the date on which this decree shall become final, otherwise, the appeal is to stand dismissed.
HAWTHORNE, J., concurs in the decree.
McCALEB, SIMON, and HAMITER, JJ., dissent in part.