Eggerson **FOUNTAIN**, Nace Fountain, Hosea Fountain, Plaintiffs,

v.

**NEW ORLEANS PUBLIC SERVICE, INC., Defendant.**

**Civ. A. No. 13159.**

United States District Court
E. D. Louisiana,
New Orleans Division.

March 6, 1967.

Edgar Corey, New Orleans, La., for plaintiffs.

Charlton B. Ogden, II, New Orleans, La., for defendant.

BOYLE, District Judge:

The plaintiffs are seeking damages for the alleged wrongful death of one Garfield Fountain, their brother.

At the time of his death, the deceased, it is alleged in Article IV of the complaint, "was working for the Maloney Trucking Company in the U. S. Foreign Trade Zone at New Orleans, assisting in the loading of tractors on a railroad car."

It is further alleged that the death resulted from electrocution when the boom of a crane, to which was attached a cable being held by the decedent, came in contact with an uninsulated high tension electric power line traversing the area. Plaintiffs charge that the power company defendant, alleged to be the owner of the power line, was negligent in failing to place the line underground or in failing to insulate the line or in failing to place proper warning signs in the area.

No attempt is made to sustain jurisdiction on the ground of diversity and no allegations of diversity are found in the complaint.

Federal question jurisdiction [1] is urged by plaintiffs on the basis of the allegations that the death occurred within the territorial limits of the Foreign Trade Zone in the Port of New Orleans and the provisions of the Act of Congress [2] authorizing the creation of "foreign-trade zones in or adjacent to ports of entry under the jurisdiction of the United States." The requisite jurisdictional amount is alleged.

The defendant has moved to dismiss the complaint on the ground that this Court lacks jurisdiction.

The general rule governing pleading Federal jurisdiction requires more than a simple allegation that jurisdiction exists or citation of a Federal statute. Rather, it is required that the complaint clearly set out the basic facts necessary to support the conclusion that there is Federal jurisdiction. Beeler v. United States, 338 F.2d 687, 689 (3rd Cir., 1964). Rule 8(a) of the Federal Rules of Civil Procedure requires that a pleading "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends * * *."

Being Courts of limited jurisdiction, there is no presumption in favor of the jurisdiction of the Federal Courts. The complaint must make positive averments of such jurisdiction. In Borne, et al. v. Jones, 59 F.Supp. 170, aff'd 147 F.2d 1008 (5th Cir., 1945), this Court said:

"It is well settled that the jurisdiction of the United States District Courts is *limited* in the sense that they enjoy no other jurisdiction than that conferred upon them by statute, under the Constitution of the United States. Such being the case, at the outset there exists the legal presumption that a cause is *without* the jurisdiction of this Court, unless the contrary affirmatively appears. Jurisdiction may not be inferred argumentatively from averments in the pleadings; the averments of jurisdiction should be positive. Upon the plaintiffs, therefore, rested the obligation of establishing, definitely, that jurisdiction to try the action filed does actually exist in this Court." (Citations omitted.)

1. Article II of the complaint states: "The jurisdiction of this Court is invoked under the provisions of 19 U.S.C.A., Sec. 1331." The Court has construed the citation as intended to be 28 U.S.C., Sec. 1331.

2. 19 U.S.C. § 81a et seq.

See also Smith v. McCullough, 270 U.S. 456, 459, 46 S.Ct. 338, 70 L.Ed. 682; Barron & Holtzoff, Federal Practice & Procedure, Vol. IA, Sec. 254, pp. 40–43.

■ The plaintiffs' sole averment relative to this Court's claimed jurisdiction is that appearing in Article II of the complaint.[1] Reconstructing the allegation to read that this Court has jurisdiction because the action "arises under the Constitution and laws of the United States," and applying, primarily, the well established test that to bring a case within the statute (28 U.S.C. 1331) a right created by the Constitution or laws of the United States must be an essential element of the plaintiffs' cause of action (Gully v. First National Bank, 299 U.S. 109, 112, 57 S.Ct. 96, 81 L.Ed. 70 (1936), we find Federal question jurisdiction lacking. Plaintiffs' cause of action for their brother's death, if any they have, arises, not out of any Federal statute or constitutional provision, but under the Louisiana wrongful death statute.[3]

However, in giving further consideration to the question, we have construed the complaint liberally in favor of the plaintiffs in view of their counsel's urging, on argument in opposition to the Motion to Dismiss, that this Court has jurisdiction by virtue of the Foreign-Trade Zone Act.

Specifically, counsel contends that jurisdiction rests in this Court by virtue of the following language of the statute:

> "The Board is authorized, subject to the conditions and restrictions of this chapter and of the rules and regulations made thereunder, upon application as hereinafter provided, to grant to corporations the privilege of establishing, operating, and maintaining *foreign-trade zones in or adjacent to ports of entry under the jurisdiction of the United States.*"[4] (Emphasis supplied.)

The basis of that contention is that the phrase "under the jurisdiction of the United States" refers to "foreign-trade zones," rather than to "ports of entry." If complainants' theory is correct, then, even though there was no reference to this section in the complaint, it may be possible to conclude that an allegation placing the occurrence of the incident within the confines of the zone is sufficient to support Federal jurisdiction.

Counsel have not cited, and this Court is not aware of, any reported cases dealing with the grammatical construction of this section. Nor has any decision come to our attention wherein Federal Court jurisdiction of a death action, arising under a State statute out of an occurrence within a Foreign-Trade Zone, has been adjudicated on the theory advanced by plaintiffs or, for that matter, on any other theory. Therefore, this inquiry is res nova and one which we must resolve unaided by previous judicial determination.

■ The Act of Congress authorizing the creation of Foreign-Trade Zones was enacted in 1934. The purpose of the legislation was and is to encourage and facilitate foreign commerce by the formation of areas in ports of entry wherein goods in foreign commerce may be stored within the boundaries of the United States or its territories without payment of custom duties, until and unless any of such goods pass from that zone into customs territory of the United States. Hence, goods may be deposited in a Foreign-Trade Zone by one shipper and later loaded aboard another ship bound for other ports, without being liable for custom duties.

There are several considerations which, when taken together, yield the conclusion that "under the jurisdiction of the United States" modifies "ports of entry" rather than "foreign-trade zones." First of all, no recorded discussion by members of either House of Congress can be found directly treating with the intended extent of the jurisdiction of the United States over these Foreign-Trade Zones. However, certain inferences may be drawn from an examination of the

---

3. Art. 2315, La.Civ.Code.

4. 19 U.S.C. § 81b(a).

relevant sections of the Congressional Record concerning the Foreign-Trade Zone Act. Congressman Emanuel Celler, the sponsor of the bill, described a "free port," i. e., a foreign-trade zone, in the following language:

"A free port or free zone is a place limited in extent but differs from adjacent territory in being exempt from custom laws as affecting goods destined for re-export. * * * A free zone may be defined as an isolated, inclosed, and policed area in or adjacent to a port of entry, without resident population, furnished with the necessary facilities for lading and unlading * * * without payment of duties and without the intervention of customs officials. It is subject a little within adjacent regions to all the laws relating to pubic health, vessel inspection, and indeed everything except the customs." [5]

█ There is nothing in this definition which in any way suggests that Congress intended that the Courts of the United States would have jurisdiction over actions for damages for wrongful death arising under State statutes out of accidents occurring within a Foreign-Trade Zone, or indeed any matters, save in the area of customs, which fall within the constitutional authority of Congress *to regulate foreign commerce and to provide for the imposition of duties thereon.*

Congressman Celler recites the "general scope of the bill" to be as follows:

"H.R. 9322 authorizes a board consisting of the Secretaries of Commerce, Treasury, and War, that under such rules and regulations as they shall provide, to grant to certain corporations the privilege of establishing and maintaining these free ports in or adjacent to *ports of entry under the jurisdic-*

*tion of the United States * * * The* grantee must provide adequate docks, warehouses, and adequate transportation connections with surrounding territory." [6] (Emphasis supplied.)

The phrase "under the jurisdiction of the United States" appears in the last segment quoted above, as well as in many other instances in the course of the congressional debate on this Act. Each time it appears, it immediately follows the phrase "port of entry." It seems that no other reasonable conclusion could be drawn than that reference is to "port of entry," especially when the significance of the term "port of entry" is borne in mind. Technically speaking, a "port of entry" is an area designated by executive order of the President of the United States whereat custom duties are collected.[7] Thus, to the extent that Federal custom officers are stationed at "ports of entry" such areas may be said to be under the jurisdiction of the United States. Viewed in that light, the phrase would confer no jurisdiction on the Courts of the United States over tort claims under State law arising within the confines of a Foreign-Trade Zone or elsewhere in a port of entry for that matter.

█ Furthermore, assuming arguendo that "under the jurisdiction of the United States" refers to "foreign-trade zones," nothing in the Act itself, or the regulations promulgated thereunder,[8] indicates that such jurisdiction would extend to any matters unrelated to custom duties or the enforcement of Federal laws and regulations concerning foreign commerce. The provisions dealing with the authority and jurisdiction of the United States in Foreign-Trade Zones are clearly aimed at preventing the contingency of goods deposited therein "slipping by customs" and being received into the United States duty free.[9]

---

5. Cong.Rec., Vol. 78, Part 9, p. 9853.

6. Cong.Rec., Vol. 78, Part 9, p. 9854.

7. 19 U.S.C. § 2.

8. 15 C.F.R. 400.100 & ff.

9. 19 U.S.C. § 81d provides that the Secretary of the Treasury shall assign to the zone the necessary customs officers and guards to protect the revenue and to provide for admission of foreign merchandise into customs territory. The regulations

Indeed, if, by use of the language "under the jurisdiction of the United States," Congress had intended that the Federal Courts would be vested with jurisdiction over any and all litigation arising in or in connection with Foreign-Trade Zones, we question whether 19 U.S.C. § 81r(b) and (c) [10] would have been couched in the language there found.

Complainants rely heavily upon the case of During v. Valente, 267 App.Div. 383, 46 N.Y.S.2d 385 (New York Supreme Court, Appellate Division, 1944) in suppport of their contention that the jurisdiction of the United States over Foreign-Trade Zones is plenary. Apart from the fact that this is a State Court decision, it is also noncontrolling in that it holds that the licensing requirements of the New York Alcoholic Beverage Control Law were not applicable to the sale of brandy in foreign commerce within a Foreign-Trade Zone in New York. The sole basis of this decision was the paramount power of the Federal Government to regulate foreign commerce under the United States Constitution. The decision does not deal with the jurisdiction, or lack thereof, conferred upon the Federal District Courts in cases concerning the Foreign-Trade Zones involving matters other than those affecting customs or foreign commerce.

Supervision over the operation of the zones by the Board and policing thereof by Federal customs officials in order to regulate foreign commerce and control customs for protection of the revenues fall far short of extending jurisdiction over the zones to the Federal Courts in any matters other than in those areas as to which the Federal Courts generally would have jurisdiction without a Foreign-Trade Zone being concerned.

We conclude that the Foreign-Trade Zone Act by its own terms does not confer plenary jurisdiction on the United States in cases involving matters other than those relating to customs or regulating commerce.

There remains the question of whether the complaint properly presents a Federal question under the theory that State wrongful death statutes become Federal law as regards Federal enclaves located within a given State. Here again, it should be pointed out that the complaint does not allege facts supporting a conclusion, or even a conclusion, that the Foreign-Trade Zone in the Port of New Orleans is a Federal enclave. However, since complainants cite cases wherein it is shown that under certain circumstances cases arising under State laws are treated as cases arising under the laws of the United States within the meaning of 28 U.S.C.A. § 1331, we have considered and will dispose of this possibility in this case.

Mater v. Holley, 200 F.2d 123 (5th Cir., 1952), relied on by plaintiffs, involved the question of whether the Federal District Court had jurisdiction of a suit for damages for personal injuries sustained in an automobile accident which occurred within the limits of Fort McPherson, a military reservation in the State of Georgia, the territory comprising which had been ceded by the State to the United States. There the Court posed this question:

"It remains to be determined, however, whether there is also federal jurisdiction of such an action as one which arises under the constitution or laws of the United States within 28 U.S.C.A. § 1331, on which appellant here relies."

---

(15 C.F.R. 400.403) set up stringent specifications for construction of a zone and the operation thereof (15 C.F.R. 400.-800–814) in order to assure segregation from customs territory.

10. 19 U.S.C. § 81r(b) authorizes the Board to "invoke the aid of the district courts of the United States" in compelling the attendance of witnesses, the giving of testimony and the production of documentary evidence at hearings which Section 81r(a) empowers the Board to hold for the purpose of determining whether its grants of authority to create, maintain and operate foreign-trade zones should be revoked. 19 U.S.C. § 81r(c) provides for appeal to the Court of Appeals for the Circuit in which the zone is located from an order of the Board revoking a grant.

Answering that question, the Court said:

"In Chicago, Rock Island & Pacific Ry. Co. v. McGlinn, 114 U.S. 542, 5 S.Ct. 1005, 29 L.Ed. 270, the Supreme Court declared the rule to be that when legislative power over territory is transferred from one sovereign to another, the then existing laws of the surrendering sovereign for the protection of private rights, so far as consistent with the laws of the new sovereign, continue in force until abrogated or altered by the new sovereign. This principle was there held applicable to the cession by a state to the United States of land for a military reservation such as is here involved. This assures that no area, however small, will be left without laws regulating private rights. And in James Stewart & Co. v. Sadrakula, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596, it was held that a section of the New York Labor Law McK.Consol.Laws, c. 31, remained in effect 'as federal law' on lands ceded to the United States for a postoffice site. See also 16 U.S.C.A. § 457, expressly adopting as federal law the local law of liability for negligence and wrongful death for places over which the United States has exclusive jurisdiction.

"When these lands were ceded by the State of Georgia to the United States, Georgia sovereignty thereover terminated and federal sovereignty became complete and exclusive with the reservations already stated. Surplus Trading Co. v. Cook, 281 U.S. 647, 652, 50 S.Ct. 455, 457, 74 L.Ed. 1091, 1095. It was there said: 'It long has been settled that, where lands for such a purpose are purchased by the United States with the consent of the state Legislature, the jurisdiction theretofore residing in the state passes, in virtue of the constitutional provision, to the United States, thereby making the jurisdiction of the latter the sole jurisdiction.'

"It seems indubitable that any law existing in territory over which the United States has 'exclusive' sovereignty must derive its authority and force from the United States and is for that reason federal law, even though having its origin in the law of the state within the exterior boundaries of which the federal area is situate. When, therefore, this area was ceded by Georgia to the United States, Georgia law as such, and by virtue of Georgia sovereignty ceased to exist, but remained operative as federal law by virtue of the sovereignty of the United States.

"* * * It would be incongruous to hold that although the United States has exclusive sovereignty in the area here involved, its courts are without power to adjudicate controversies arising there, but must relegate the parties to the courts of another sovereign for relief.

"Upon the principles above cited, we hold that this action arises under the laws of the United States, within the meaning of 28 U.S.C.A. § 1331, and therefore should not have been dismissed. Existing federal jurisdiction is not affected by concurrent jurisdiction in state courts. (Citing cases.)"

Also of importance is 16 U.S.C. § 457, not referred to by either party to this action. This section reads as follows:

"In the case of the death of any person by the neglect or wrongful act of another within a national park or other place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injuries sustained in any such place the rights of the parties shall be governed by the laws of the state within the exterior boundaries of which it may be."

In Stokes v. Adair, 265 F.2d 662 (4th Cir., 1959) jurisdiction was invoked under 28 U.S.C. § 1331, and the Court there had for decision the issue of its jurisdic-

tion of an action for damages arising from an automobile accident which occurred within the territory of Fort Leavenworth, Kansas. Maintaining Federal jurisdiction, the Court said:

"We are of the opinion that the District Court had jurisdiction of the pending case both under the general rule of law applicable when exclusive jurisdiction over territory is ceded by a state to the United States, and also under the express provisions of the act of February 1, 1928, 16 U.S.C.A. § 457."

If, as a matter of fact, the territory comprising the Foreign-Trade Zone in the Port of New Orleans is subject to the exclusive jurisdiction of the United States then a Federal question would be presented and this Court would have jurisdiction. The complaint here, however, does not allege such to be the fact.

 In order to determine whether or not the Foreign-Trade Zone at New Orleans is under the exclusive jurisdiction of the United States, several factors must be considered. Principal among these are (a) ownership vel non of the area comprising the Foreign-Trade Zone at New Orleans or lease thereof; (b) cession of jurisdiction over the area comprising the Zone to the United States by the State of Louisiana; and (c) the acceptance vel non by the United States of such jurisdiction (if any such jurisdiction were ceded) as envisioned by the United States Constitution, Art. 1, Sec. 8, Cl. 17, and 40 U.S.C. § 255. As to all three, the complaint is silent.

If the United States owns or leases the area comprising the Foreign-Trade Zone at New Orleans, then exclusive jurisdiction over the area is ceded to the United States by the State of Louisiana by R.S. 52:1 or its source provisions. This statute is a blanket grant of exclusive jurisdiction to the United States as an incident of Federal ownership or lease of land within the State of Louisiana falling within the purview of United States Constitution, Art. 1, Sec. 8, Cl. 17, which provides:

"To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings * * *."

As to land acquired by the United States pursuant to United States Constitution, Art. 1, Sec. 8, Cl. 17, quoted supra, the acceptance of the United States is a condition precedent to the vesting of exclusive jurisdiction where ceded. Only since 1940 has there been a particular method prescribed by statute by which the United States must manifest its acceptance of exclusive jurisdiction as a concomitant of its acquisition of territory lying within the boundaries of a State.

Until 1940 it appears that, although the Courts recognized the United States could decline to accept exclusive jurisdiction over land it acquired, nonetheless, acceptance was apparently presumed in the absence of evidence indicating a rejection. See Humble Pipe Line Co. v. Waggonner, 376 U.S. 369, 84 S.Ct. 857, 11 L.Ed.2d 782 (1964) and the cases cited therein. See also Fort Leavenworth R. R. Co. v. Lowe, 114 U.S. 525, 5 S.Ct. 995, 29 L.Ed. 264 (1884).

 In 1940 Congress amended 40 U.S.C. § 255 to include the following language:

"Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or inter-

ests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted."

Thereafter, express and positive acceptance was required, in the absence of which rejection of jurisdiction is conclusively presumed. In the instant case, if the Government acquired any property interests in the Foreign-Trade Zone at New Orleans after 1940, an acceptance by the United States, as required by 40 U.S.C. § 255, would be necessary to support a finding of Federal jurisdiction. IBM Corporation v. Ott, 230 La. 666, 89 So.2d 193 (La. 1955); Adams v. United States, 319 U.S. 312, 63 S.Ct. 1122, 87 L.Ed. 1421 (1942).

■ Plaintiffs have not alleged, contended or suggested that the United States, prior to or after 1940, acquired, by lease, purchase or otherwise, any interest in the territory comprising the New Orleans Foreign-Trade Zone, which acquisition is criticial to their contention that the cause of action which they assert arises under the Constitution or laws of the United States. Absent such fact, Mater v. Holley, supra, and James Stewart & Co. v. Sadrakula, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596 (1939), relied on by plaintiffs, cannot be applied here since the jurisdictional factors necessary to the application of the rule of those cases [11] have not been alleged. For the reasons hereinafter set forth, we believe such factors could not validly be alleged.

Nearly three quarters of a century ago when the Port of New Orleans had gradually extended beyond the limits and jurisdiction of the City of New Orleans and was faced with conditions which threatened its further advancement and development,[12] the Louisiana Legislature created the Board of Commissioners for the Port of New Orleans for the purpose of supervising, controlling, operating and improving wharves and facilities of the Port.[13]

That Board of Commissioners, more readily recognizable under its popular name, "Dock Board," as it shall be referred to hereinafter, not only has the power, but is charged with the duties, among others, of regulating the commerce and traffic of and in the Port and Harbor of New Orleans, the territorial limits of which embrace three Parishes, i. e., Orleans (City of New Orleans), Jefferson and St. Bernard; of maintaining and administering the public wharves, docks and sheds of the Port; of providing police protection and other services and facilities for the Port's wharves, docks and sheds; and of fixing and charging fees for the use of wharves, docks, sheds, facilities and services.

It is empowered to pass ordinances concerning the territory, jurisdiction and control of the Port and the conduct thereof. It is further empowered, by ordinance, contract or otherwise, to change the dedication of lands and property under its administration and control from State to Federal use and may sell, lease or otherwise alienate to the United States, or any department thereof, any such lands or property needed for Federal purposes.

11. As previously pointed out, in Mater v. Holley, the lands over which the United States was held to have exclusive jurisdiction were acquired by cession from the State of Georgia. In James Stewart & Co. v. Sadrakula, the post office site was acquired by the United States by purchase with the consent of the State of New York.

12. See Preamble to Act 70 of the Louisiana Legislature of 1896.

13. Act 70 of 1896, La.R.S. 34:21 et seq.

To complete its dominance over and in the Port of New Orleans, its wharves, docks, sheds and facilities, the Dock Board has the further power to control the erection of private wharves by riparian owners within the limits of the Port; to administer those wharves; and to fix fees and charges for the use thereof.

Additionally, it may acquire by purchase or expropriation any property, wharves, or landings necessary for the benefit of the commerce of the Port. Without the payment of compensation, it may also expropriate any private wharves, landings, buildings, or other structures erected by riparian owners within the Port limits without first having obtained the Dock Board's approval of the plans and specifications for same and its consent for their construction and erection.[14]

As a condition precedent to the grant of an application by "any public corporation" for authority to establish a free trade zone, where the harbor facilities of any port of entry are owned or controlled by a State, Congress required that the application be authorized by a special Act of the Legislature of the State.[15]

To satisfy that condition, the Louisiana Legislature in 1934 authorized the Dock Board [16] to apply to the Secretary of Commerce of the United States for the purpose of establishing, operating, and maintaining a Foreign-Trade Zone in the Port of New Orleans under 19 U.S.C. § 81a et seq.[17]

The Louisiana statutory provisions [18] authorizing application for a grant of a Foreign-Trade Zone in no way indicate that the State of Louisiana has transferred ownership, sovereignty, or exclusive jurisdiction to the United States with regard to the New Orleans zone located in the dock area of the Port controlled by the Dock Board.

The Act of Congress authorizes the grants to private corporations which are defined as "any corporation (other than a public corporation) which is organized for the purpose of establishing, operating, and maintaining a foreign-trade zone and which is chartered under special Act enacted after June 18, 1934, of the State or States within which it is to operate such zone." 19 U.S.C. § 81a (f), 81b; 15 C.F.R. 400.105(b), 400.500. However, preference is given to public corporations. 19 U.S.C. § 81b(c); 15 C.F.R. 400.503. A grant to a private corporation will not be approved unless it has been authorized by an Act of the State Legislature. 15 C.F.R. 400.502.

A private corporation's application for a grant must be accompanied by evidence of the applicant's qualifications to make the application, which evidence, among other things, shall include "a certified copy of the special act or acts of the State or States in which the zone is located (enacted after June 18, 1934) and providing for the chartering of the corporation for the specific purpose of establishing a zone, * * *." 15 C.F.R. 400.603(k) (3) (iii).

Our research fails to disclose that the Legislature of Louisiana has ever authorized the chartering of a private corporation for the specific purpose of establishing a zone.

We believe it is clear from the provisions of the Act of Congress, and the regulations adopted thereunder, that it was contemplated that the United States would not acquire, by purchase, lease, or otherwise, the fee of or other proprietary interest in the territory in which Foreign-Trade Zones are located. As pre-

---

14. La.R.S. 34:23.

15. 19 U.S.C. § 81b(d).

16. Although it has been held that the Dock Board is not a corporation, its status as an agency of the State of Louisiana is beyond question. Hartwig Moss Insurance Agency v. Board of Commissioners, Port of New Orleans, 206 La. 395, 19 So.2d 178 (1944). 19 U.S.C. § 81a(e) and the

regulations adopted under 19 U.S.C. § 81h define a "public corporation" to include a State or a political subdivision or public agency thereof. 15 C.F.R. 400.-105(a).

17. La.R.S. 51:62 & source provisions.

18. La.R.S. 51:61 et seq. & source provisions.

viously noted, the Act provides for the grant to corporations, public and private, of the privilege to establish, operate and maintain Foreign-Trade Zones.[19] The regulations prescribe that an application to the Board for grants shall be accompanied by various exhibits, one of which is required to contain "a statement giving full details as to the applicant's plans for acquiring title to, or the right to occupy and use" lands essential to the zone project, or, if title or the right to use be already in the applicant, a statement showing from whom acquired, the date of acquisition, the nature and extent of the right, and the term thereof.[20]

Being unable to discover any theory under which we could support a finding that this Court has jurisdiction of this death action, the Motion to Dismiss for lack of jurisdiction must be, and it is, granted.

---

19. 19 U.S.C. § 81b(a), see also 15 C.F.R. 400.500.

20. 15 C.F.R. 400.603.