Dear Mr. Meyer:
You have requested an opinion of the Attorney General regarding the ad valorem tax exempt status, vel non, of lands and other properties comprising the England Economic and Industrial Development District (District). You specifically ask the following:
 (1) Whether the property and improvements located at the England Airpark and Community (Airpark) and owned by the United States Government are subject to ad valorem taxation?
 (2) Whether the District's leases of property to private industry/business for the purposes set forth in R.S. 33:130.352 constitute a public purpose?
 (3)Whether the property and improvements leased by the District to private concerns, including the leasehold interests of the District's tenants, in furtherance of the express objects and purposes of the District are exempt from ad valorem taxation?
R.S. 33:130.351 creates the District as a political subdivision of the state, and establishes its territorial jurisdiction.
The object and purposes for the District's creation are set forth in R.S. 33:130.352 which reads, in pertinent part, the following:
 "The District is created for the object and purposes of accepting title from the United States of America to any or all real and personal property and improvements included in England Air Force Base and utilizing that and other property . . . to replace and enhance the economic benefits generated by the former air base with diversified activities, including, but not limited to, activities and planned land uses to foster creation of new jobs, economic development, industry, health care, commerce, manufacturing, tourism, relocation of people and businesses to the area, aviation, military, warehousing, transportation, offices, recreation, housing, and conservation, the acquisition of land and improvements and the construction, operation, and maintenance of facilities, improvements and infrastructure, including buildings, runways, roads, bridges, drainage, and utilities."
As you are aware, the United States of America presently owns all property and improvements located at the Airpark. R.S. 52:1
provides with respect to the State of Louisiana's authority, vel non, to assess ad valorem taxes on property owned by the federal government. It provides, in pertinent part, the following:
 "A. The United States, in accordance with the seventeenth clause, eighth section of the first article of the Constitution of the United States, may acquire and occupy any land in Louisiana required for the purposes of the federal government. The United States shall have exclusive jurisdiction over the property during the time the United States is the owner or lessee of the property.
 B. The property shall be exempt from all taxation, assessment, or charge levied under authority of the state."
Cases are legion, both federal and state, that a state may not exercise ad valorem tax assessment authority over property, both real and personal, owned by the United States.
See Humble Pipe Line Co. v. Waggonner, 84 S.Ct. 857,376 U.S. 369, 11 L.Ed.2d 782 (1964); MRT Exploration Co. v.McNamara, C.A. 1984, 731 F.2d 260; Mississippi RiverFuel Corp. v. Fontenot, C.A. La. 1956, 234 F.2d 898, Certiorari Denied; and International Business Machines Corp.v. Ott, 230 La. 666, 89 So.2d 193 (1956).
Therefore, in answer to your first question, it is the opinion of this office that the land and improvements located at the Airpark and owned by the United States of America are exempt from ad valorem taxation.
Once title of the subject land and improvements is transferred to the District, its ad valorem tax exempt status is governed by Article VII, Section 21(A) of the Louisiana Constitution of 1974. It provides:
 " § 21. In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
 (A) Public lands; other public property used for public purposes."
The above provision is distinguishable from its predecessor found in Article 10, Section 4 of the 1921 Constitution. It read:
 " § 4. The following property, and no other, shall be exempt from taxation:
 1. Public property. All public property."
As can be seen from the above, the 1974 provision distinguishes between two classifications of public property, to wit:
(1) Public lands; and
(2) Other public property used for public purposes.
The fact that the constitution imposes no requirement that public lands be used for public purposes leads us to the conclusion that any and all public lands are uncategorically exempt from ad valorem taxation regardless of the purpose for which said public lands are used. We find support for this position in Slay v.Louisiana Energy and Power Authority, 473 So.2d 51 (La. 1985). Therein, the Court, citing Foreman v.Vermilion Parish, 336 So.2d
 ". . . the Third Circuit held that regardless of its use, real estate owned by a police jury was `public property.'" (Emphasis added.)
This office has previously reached the same conclusion. In Attorney General Opinion No. 89-599, we concluded that it would be legally permissible to have separate assessments for tax exempt land owned by the City of New Orleans and non-tax exempt leasehold improvements constructed by a third party. In accord, see Attorney General Opinion No. 80-1140 which held that land donated to the City of New Orleans is not subject to ad valorem taxation.
Assuming, arguendo, Article VII, Section 21(A) is deemed ambiguous, the interpretation of those charged with its administration or enforcement over a long period of time is accorded great weight. State ex rel, Singleman v.Morrison, 57 So.2d 238 (La.App. Orl. Cir. 1952), Writ Denied.
I have been advised by legal counsel for the Louisiana Tax Commission that it has historically been the position of the Commission that public lands are, indeed, exempt from ad valorem taxes regardless of the purpose(s) for which they may be used.
Accordingly, it is the opinion of this office that, once title to the land is transferred to the District, it will be exempt from the assessment of ad valorem taxes. We turn now to the issue of other public property which will belong to the district, some of which will be leased to private entities.
Initially, it should be noted that the jurisprudence of this state has consistently held that constitutional and statutory grants of exemption from taxation must be strictly construed in favor of the taxing body, and against the taxpayer desiring the exemption. Any plausible doubt is fatal. Thus, an exemption, being an exceptional privilege, must be clearly, unequivocally, and affirmatively established. Zapata Haynie Corp.v. Larpenter, 583 So.2d 867, (La.App. 1st Cir. 1991), Writ Denied. In addition, as you note in your memorandum, the legislature may not create tax exemptions not otherwise allowed by the Louisiana Constitution. In Re Petrey,630 So.2d 700 (La. 1994).
As noted above, Article VII, Section 21(A), when referring to the tax exempt status of public property, other than public lands, imposes a two-fold requirement that:
(1) Title to the property must vest in the public and
(2) The property must be used for a public purpose.
We believe the necessity of meeting both criteria is clearly recognized by the Louisiana Supreme Court in Slay, cited supra. Justice Calogero, writing for the Court, initially addressed the issue of the public status, vel non, of the Louisiana Energy and Power Authority (LEPA) and the Lafayette Public Power Authority (LPPA), and determined that both constituted units of local government and/or political subdivisions of the state. Thus, property owned thereby constituted "public property" for purposes of Article VII, Section 21(A).
Shifting its focus to the second requirement, the Court stated:
 "The second requirement for ad valorem tax exemption is that the public property be used for a public purpose. Providing electric service is a public function . . .
 LEPA was created `to insure an adequate, reliable and economical supply of electrical power and energy to the participating municipalities.' In the case of LPPA, the legislature mandated a liberal construction of the authorizing statutes so that `greater economy and efficiency in the providing of electrical and energy services to the citizens of the municipality may be achieved.' Providing electric service to municipalities and its citizens serves a public purpose.
 For the foregoing reasons, LEPA and LPPA, are political subdivisions of the State of Louisiana, constitutionally created by statute (LEPA) and by statute and ordinance (LPPA), and that their respective ownership interest in Rodemacher to constitute public property used for public purposes, exempt from ad valorem taxation by virtue of Article VII, § 21(A) of the Louisiana Constitution of 1974." (Emphasis added.)
This office has previously recognized that the fact that public property is leased to a private entity does not preclude it from being used for a public purpose so as to be exempt. See Attorney General Opinion Nos. 93-392 and 89-599.
R.S. 33:130.354 provides, in pertinent part, the following with respect to the governmental functions of the District:
 "The exercise by the board of the powers conferred by this Subpart shall be deemed and held to be essential governmental functions of the state. As the exercise of the powers granted hereby will be in all respects for the benefit of the people of the state, for the increase of their commerce and prosperity and for the improvement of their health and living conditions, the district shall not be required to pay any taxes, including, but not limited to, sales and use taxes, ad valorem, occupational licensing, income, or any other taxes of any kind or nature, or assessments upon any property acquired or used by the district under the provisions of this Subpart, or upon the income therefrom, and any property acquired or used by the district under the provisions of this Subpart and the income therefrom and any bonds issued hereunder and the income therefrom shall be exempt from taxation by the state and by any parish, municipality, or other political subdivision of the state." (Emphasis added.)
As can be gleaned from the above statutory provision, the legislature has deemed the exercise by the District of its powers to be essential governmental functions of the state. Further, the District's property, deemed by the legislature to be used for a public purpose, is exempt from the assessment of ad valorem taxes.
Accordingly, and in answer to your second question, the District's lease of property to private industry/business to further the purposes set forth in R.S. 33:130.352 constitutes a public purpose. It, therefore, follows that the property and improvements leased by the District to private industry/business in furtherance of the express objects and public purposes of the District are exempt from ad valorem taxation pursuant to the provisions of Article VII, Section 21(A) and R.S. 33:130.354.
In accord, see Attorney General Opinion Nos. 93-642 and 88-454, copies of which are enclosed for your reference and convenience.
Trusting this adequately responds to your inquiries, I am
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: _________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/Rob3:bb
0416R
Mr. James L. Meyer Chairman, England Economic and Industrial Development District 1611 Arnold Drive Alexandria, LA 71311
Date Received: 10-03-94
Date Released:
ROBERT E. HARROUN, III ASST. ATTORNEY GENERAL