JAMES STEWART & CO. *v.* SADRAKULA,
ADMINISTRATRIX.

No. 251.   Argued January 12, 1940.—Decided January 29, 1940.

*Mr. Clarence E. Mellen* for appellant.

96

*Mr. Leo Fixler* for appellee.

MR. JUSTICE REED delivered the opinion of the Court.

This is an appeal from a final judgment of the Supreme Court of New York awarding damages for accidental death. As a statute of the state necessarily was sustained against a contention that its application to these circumstances violated the provisions of the Constitution as to the exclusive authority of the United States over a post-office site purchased with the consent of New York,[1] this Court has jurisdiction under § 237 (a) of the Judicial Code and the Act of January 31, 1928.

The issue of law involved is whether an existing provision of a state statute requiring the protection of places of work in the manner specified in the statute[2] remains

---

[1] Constitution, Art. I, § 8, Cl. 17:

"The Congress shall have Power . . . To exercise exclusive Legislation . . . over all Places purchased by the consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings; . . ."

[2] New York Labor Law § 241 reads as follows:

"Sec. 241. Protection of Employees on Building Construction or

effective as a statute of the United States applicable to the particular parcel after the federal government acquires exclusive jurisdiction of a parcel of realty on which work is being done.

The decedent, an employee of a rigging company, a sub-contractor engaged in the construction of the New York post office, fell from an unplanked tier of steel beams down a bay and was killed. In an action of tort against the general contractor, his administratrix narrowed the scope of the charges of negligence until violation of the quoted sub-section of the Labor Law only was alleged. The trial court found that the proximate cause of the accident was the negligent failure to plank the beams as required by the statute. The Appellate Division affirmed [3] on the ground that the Labor Law provision continued effective over the post-office site after the transfer of sovereignty, and the Court of Appeals by an order of remittitur, 21 N. E. 2d 217, also affirmed on the same ground with a statement that in its affirmance it necessarily passed upon the validity and applicability of § 241 (4) of the Labor Law under Article I, § 8 of the Constitution. 280 N. Y. 651, 730; 20 N. E. 2d 1015; 21 N. E. 2d 217.

The language of the Court of Appeals and the record show indubitably that a determinative federal question

---

Demolition Work. All contractors and owners, when constructing or demolishing buildings, shall comply with the following requirements:

. . . . .

"4. If the floor beams are of iron or steel, the entire tier of iron or steel beams on which the structural iron or steel work is being erected shall be thoroughly planked over to not less than six feet beyond such beams, except spaces reasonably required for proper construction of the iron or steel work, for raising or lowering of material or for stairways and elevator shafts designated by the plans and specifications."

[3] 254 App. Div. 892.

was decided.[4]    The conclusion as to the continued vitality of existing state statutory regulations in the protection of workmen in ceded federal areas makes it substantial.[5]    The motions to dismiss or affirm the appeal are denied.[6]

If the quoted provision of the Labor Law is operative even though exclusive jurisdiction had already vested in the United States, it is unnecessary to determine whether exclusive jurisdiction had actually passed to the United States.    The state courts assumed that federal sovereignty was complete through consent by the state and we make the same assumption.    Does the acceptance of sovereignty by the United States have the effect of displacing this sub-section of the New York Labor Law? We think it did not.    The sub-section continues as a part of the laws of the federal territory.

It is now settled that the jurisdiction acquired from a state by the United States whether by consent to the purchase or by cession may be qualified in accordance with agreements reached by the respective governments.[7]    The Constitution does not command that every vestige of the laws of the former sovereignty must vanish.    On the contrary its language has long been interpreted so as to permit the continuance until abrogated of those rules existing at the time of the surrender of sovereignty which govern the rights of the occupants of the territory trans-

---

[4] *Honeyman* v. *Hanan*, 300 U. S. 14, 19; *Whitfield* v. *Ohio*, 297 U. S. 431, 435; cf. *McGoldrick* v. *Gulf Oil Corp.*, ante, p. 2.

[5] *Milheim* v. *Moffat Tunnel Dist.*, 262 U. S. 710, 716.

[6] Cf. *Mason Co.* v. *Tax Commission*, 302 U. S. 186, 197; *Murray* v. *Gerrick & Co.*, 291 U. S. 315-16.

[7] *Collins* v. *Yosemite Park Co.*, 304 U. S. 518, 529–30; *James* v. *Dravo Contracting Co.*, 302 U. S. 134, 147–49.

ferred.[8]  This assures that no area however small will be left without a developed legal system for private rights. In *Chicago, R. I. & P. R. Co.* v. *McGlinn, supra,* a Kansas statute relating to recovery against a railroad for the injury to livestock on its right of way existed at the time of the cession to the United States of exclusive jurisdiction over Fort Leavenworth Military Reservation.  It was held that the statute was carried over into the law covering the Reservation.  Conversely, in *Arlington Hotel Co.* v. *Fant, supra,* an Arkansas statute relieving innkeepers, passed after cession of Hot Springs Reservation, was held unavailing as a defense to a Reservation innkeeper's common-law liability in accordance with Arkansas law before the cession.  Such holdings assimilate the laws of the federal territory, where the Congress has not legislated otherwise, to the laws of the surrounding state.

The Congress has recognized in certain instances the desirability of such similarity between the municipal laws of the state and those of the federal parcel.  Since only the law in effect at the time of the transfer of jurisdiction continues in force, future statutes of the state are not a part of the body of laws in the ceded area.  Congressional action is necessary to keep it current.  Consequently as defects become apparent legislation is enacted covering certain phases.  This occurred as to rights of action for accidental death by negligence or wrongful act.[9]  After this statute was held inapplicable to claims under state workmen's compensation acts further legis-

---

[8] *Murray* v. *Gerrick & Co.,* 291 U. S. 315, 318; *Arlington Hotel Co.* v. *Fant,* 278 U. S. 439, 445, 446, 454; *Chicago, R. I. & P. R. Co.* v. *McGlinn,* 114 U. S. 542, 546–47.

[9] 45 Stat. 54, 16 U. S. C. § 457 (1928); see *Murray* v. *Gerrick & Co.,* 291 U. S. 315, 319; H. R. Rep. No. 369, 70th Cong., 1st Sess.; 69 Cong. Rec. 1486.

lation undertook to extend the provisions of those acts to the places under federal sovereignty.[10]   With growing frequency the federal government leaves largely unimpaired the civil and criminal authority of the state over national reservations or properties.[11]   While exclusive federal jurisdiction attaches, state courts are without power to punish for crimes committed on federal property.[12]   This has made necessary the legislation which gives federal courts jurisdiction over these crimes.[13]   The tendency toward a uniformity between the federal and surrounding state territory has caused a series of congressional acts adopting the state criminal laws.[14] Through these concessions our dual system of government works coöperatively towards harmonious adjustment.

It is urged that the provisions of the Labor Law contain numerous administrative and other provisions which cannot be relevant to the federal territory.   The Labor Law does have a number of articles.[15]   Obviously much

[10] 49 Stat. 1938, 40 U. S. C. § 290 (1936); see H. R. Rep. No. 2656, 74th Cong., 2d Sess.

[11] 30 Stat. 668 (1898) (jurisdiction receded to states over places purchased for branches of soldiers' homes); 49 Stat. 668, 16 U. S. C. § 465 (1935) (waiver of federal jurisdiction for historic sites); 49 Stat. 2025, 40 U. S. C. § 421 (1936) (same for slum-clearance and low-cost housing projects); 49 Stat. 2035 (1936) (same for resettlement and rural rehabilitation); 50 Stat. 888, § 13 (b), 42 U. S. C. § 1413 (b) (1937) (same for acquisitions of U. S. Housing Authority).

[12] *Bowen* v. *Johnston*, 306 U. S. 19, 29; *United States* v. *Unzeuta*, 281 U. S. 138; *United States* v. *Cornell*, Fed. Cas. No. 14,867; *Commonwealth* v. *Clary*, 8 Mass. 72; *People* v. *Hillman*, 246 N. Y. 467; 159 N. E. 400.

[13] Judicial Code §§ 24, 27.

[14] R. S. 5391; 30 Stat. 717 (1898); 35 Stat. 1145 (1909); 48 Stat. 152 (1933); 49 Stat. 394 (1935).

[15] Article (1) Short title; definitions; (2) The department of labor; (3) Review by industrial board and court; (4) Employment of chil-

of their language is directed at situations that cannot arise in the territory. With the domestication in the excised area of the entire applicable body of state municipal law much of the state law must necessarily be inappropriate. Some sections authorize quasi-judicial proceedings or administrative action and may well have no validity in the federal area. It is not a question here of the exercise of state administrative authority in federal territory.[16] We do not agree, however, that because the

dren and females; (5) Hours of labor; (6) Payment of wages; (7) General provisions; (8) Public work; (8-a) Grade crossing elimination work; hours and wages; (9) Immigrant lodging houses; (10) Building construction, demolition and repair work; (11) Factories; (12) Bakeries and manufacture of food products; (13) Manufacture in tenement houses; (14) Mercantile and other establishments; (15) Mines and tunnels; quarries; compressed air; (16) Explosives; (17) Public safety; (18) Miscellaneous provisions; laws repealed; when to take effect.

[16] We do not therefore need to consider the authority of the state administrative officers. New York Labor Law § 242. Cf. *Oklahoma City* v. *Sanders,* 94 F. 2d 323 (C. C. A. 10). In this case an injunction was obtained in the federal district court enjoining a city and certain of its officers from enforcing ordinances relating to licenses, bonds and inspections by daily arrests on account of violations of these ordinances by a contractor doing construction work on a low-cost housing project. The decree ·was affirmed by the circuit court of appeals after consideration of the Act of June 29, 1936 which reads that "The acquisition by the United States of any real property . . . in connection with any low-cost housing . . . project . . . shall not be held to deprive any State or political subdivision thereof of its civil and criminal jurisdiction in and over such property . . ." Except as affected by the act just quoted in part, the area was federal territory through a consent statute. The court, speaking of the recession, said:

"It was not the purpose that the state should have the right to .exert police power there through application of municipal ordinances relating to licenses, bonds, and inspections in the course of construction

Labor Law is not applicable as a whole, it follows that none of its sections are. We have held in *Collins* v. *Yosemite Park Company* [17] that the sections of a California statute which levied excises on sales of liquor in Yosemite National Park were enforceable in the Park, while sections of the same statute providing regulation of the Park liquor traffic through licenses were unenforceable.[18]

But the authority of state laws or their administration may not interfere with the carrying out of a national purpose.[19] Where enforcement of the state law would

thereon of buildings by the United States government, no such legislative intent or desire being indicated by the act."

It also quoted with approval an excerpt from an opinion of the Director, Legal Division, Federal Emergency Administration of Public Works:

"I am, therefore, of the opinion that the state or local government may not supervise the work of a contractor performing work on property owned by the United States of a contract with the United States."

[17] 304 U. S. 518, 532.

[18] We do not overlook the language in *Murray* v. *Gerrick & Co.*, 291 U. S. 315, 319, called to our attention by appellant:

"If it were held that beneficiaries may sue, pursuant to the compensation law, we should have the incongruous situation that this law is in part effective and in part ineffective within the area under the jurisdiction of the federal government."

That quotation had reference to a contention that the dependents of an employee, killed on federal territory within a state, might claim compensation as beneficiaries under a state compensation act. The compensation fund, collected and administered by state officers, was not effective in federal territory. Cf. *Atkinson* v. *Tax Commission*, 303 U. S. 20, 25. As the fund was not augmented by assessments against the federal contractor, the Court held the procedural provisions of the state compensation act did not apply.

[19] *Pittman* v. *Home Owners' Corp.*, 308 U. S. 21; *Atkinson* v. *Tax Commission*, 303 U. S. 20, 23; *James* v. *Dravo Contracting Co.*. 302

handicap efforts to carry out the plans of the United States, the state enactment must, of course, give way.[20]

May it be said that the continued application of § 241 (4) of the Labor Law [21] will interfere with the construction of the building upon this site? This is like other squares in the city. There are, of course, differentiations because of its ownership, but ownership as such has nothing to do with the safety requirements. It is true that it is possible that the safety requirement of boarding over the steel tiers may slightly increase the cost of construction to the government, but such an increase is not significant in the determination of the applicability of the New York statute. In answer to the argument that a similar increased cost from taxation would "make it difficult or impossible" for the government to obtain the service it needs, we said in *James* v. *Dravo Contracting Co.*[22] that such a contention "ignores the power of Congress to protect the performance of the functions of the National Government and to prevent interference therewith through any attempted state action." Such a safety requirement is akin to the safety provisions of Maryland law which in *Baltimore & Annapolis Railroad Co.* v. *Lichtenberg* [23] were held applicable to trucks of an independent contractor transporting government employees under a contract with the United States.

---

U. S. 134, 147, 161; *United States* v. *Unzeuta,* 281 U. S. 138, 142; *Ohio* v. *Thomas,* 173 U. S. 276, 283; *Fort Leavenworth R. Co.* v. *Lowe,* 114 U. S. 525, 531; *Kohl* v. *United States,* 91 U. S. 367, 371–72; *Thomson* v. *Pacific Railroad,* 9 Wall. 579, 591.

[20] *Anderson* v. *Chicago & N. W. Ry. Co.,* 102 Neb. 578, as commented upon in *United States* v. *Unzeuta,* 281 U. S. 138, 144.

[21] Note 2, *supra.*

[22] 302 U. S. 134, 160, 161.

[23] 176 Md. 383; 4 A. 2d 734, appeal dismissed for want of a substantial federal question, *sub nom. United States* v. *Baltimore & Annapolis R. Co.,* 308 U. S. 525.

Finally the point is made that a provision requiring boarding over of open steel tiers is a direct interference with the government. This is said to follow from the fact that the contract for the construction of the post office is an instrumentality of the federal government. As a corollary to this argument, error is assigned to the refusal of the trial court to admit in evidence a clause of the contract between the United States and the appellant reading, "State or Municipal Building Regulations do not apply to work inside the Government's lot lines." [24] While, of course, in a sense the contract is the means by which the United States secures the construction of its post office, certainly the contractor in this independent operation does not share any governmental immunity.[25] Nor do we think there was error in refusing to admit the clause of the contract as to building regulations. The quoted sentence is in a section of the contract relating to "licenses, permits, etc." We are of the opinion that it is intended to relieve the contractor from provisions as to types of material, fire hazards and the like, which are covered by the New York City Building Code.

Such a safety regulation as § 241 (4) of the New York Labor Law provides is effective in the federal area, until such time as the Congress may otherwise provide.[26]

*Affirmed.*

---

[24] The entire section reads:

"22. Permits. The contractor shall without additional expense to the Government obtain all required licenses, permits, etc. This applies to work outside the lot lines, the use of streets and sidewalks, the protection of public and traffic, connections to utility service lines, etc. State or Municipal Building Regulations do not apply to work inside the Government's lot lines."

[25] *James* v. *Dravo Contracting Co.*, 302 U. S. 134, 152; *Helvering* v. *Producers Corp.*, 303 U. S. 376, 385.

[26] 38 Opinions of the Attorney General, 341, 348, 349, is not to the contrary. It declared that § 2 of a Nevada consent statute was

clearly incompatible with exclusive jurisdiction. The section read:

"In the erection of such federal building by contract or otherwise, or in case of any subsequent reconstruction or alteration of such building, it is hereby reserved and provided that the state labor laws, the state labor safety laws and the state health laws, shall apply to all persons, firms, associations or corporations having contracts for such construction or reconstruction as to all provisions contained therein, and no contractor having any such contract shall have the right to claim to be or to declare himself to be a government instrumentality."

The opinion however further stated:

"It is to be observed that there is nothing in what has been said concerning Sections 2 and 3 of the Nevada Statute inconsistent with the doctrine that state laws regulating private civil rights (as distinguished from state criminal laws . . .) continue in force, as laws of the United States, on lands ceded by consent of the state to the United States, if not in conflict with the laws of the new sovereignty or the purpose for which the land is acquired, until superseded by laws enacted by the United States. . . . The difficulty with Sections 2 and 3 of the Nevada Act is that they do not merely occupy a vacant field until filled by the Federal Government—they withhold and reserve jurisdiction, present and future, over the matters specified in them, howsoever inconsistent with existing or future laws of the United States. That precludes exclusive jurisdiction from vesting in the United States."