In the Matter of CHARLES H. SELLS, as State Superintendent of Public Works, Appellant, against DEFENSE PLANT CORPORATION et al., Respondents.

Third Department, November 15, 1944.

*Nathaniel L. Goldstein, Attorney-General (Orrin G. Judd, Solicitor-General; John R. Davison, Assistant Attorney-General, of counsel), for appellant.*

*Harold E. Jacobson, attorney (Sol A. Liebman and David J. Cartenuto of counsel), for respondent Defense Plant Corporation.*

*John B. Henrich, Jr., attorney for respondent National Lead Company.*

*Joseph Rosch, attorney (Alfred D. Kelly of counsel), for respondent The Delaware and Hudson Railroad Corporation.*

*Irving J. Higbee, United States Attorney.*

HILL, P. J. Appeal from an order of the Essex County Special Term which dismissed the petition of the Attorney-General presented under article 78 of the Civil Practice Act, containing a prayer that Defense Plant Corporation (called DPC), The Delaware and Hudson Railroad Corporation (called Delaware) and the National Lead Company (called National) be required to " jointly petition this Court for consent and approval under Section 21 of the Railroad Law for the construction of certain grade crossings across certain public highways * * * and (2) Submit plans and specifications for the proposed crossings of the aforesaid public highways to your petitioner and the Public Service Commission as required by law; and (3) Shall restore the public highways over which crossings are to be constructed to the condition thereof prior to said construction." DPC has contracted with Delaware and National for the construction of a railroad from North Creek, the northern terminus of the railroad line of Delaware, to certain mines owned by National at Sanford Lake, Essex County, N. Y., a distance of about thirty-three miles. The railroad is to be used for the transportation of ilmenite and magnetite and extracts from National's mine which are needed by the United States Government in the prosecution of the war. DPC in 1942 and in February, 1943, commenced three condemnation proceedings to obtain the right of way for the thirty-three miles of railroad. The land sought to be condemned, and against which declarations of taking have been filed, is privately owned except two hundred twenty acres which is a part of the forest preserve of the State. The fee to the private land is taken

but an easement for the duration of the present emergency and fifteen years thereafter is taken in the State-owned lands. The railroad has been constructed and is now being operated by Delaware as lessee. It crosses two improved highways and certain earth-surfaced highways at grade. Under an agreement between DPC and National, the latter undertook to construct the railroad to which it was to be leased. The Delaware was to act as architect engineer and, after the construction of the road, was to operate the line as agent for National. A proceeding was commenced by Delaware and National under section 21 of the Railroad Law for the construction and operation of the railroad over nine public highways, but the petition was withdrawn at the suggestion of DPC upon the theory that the railroad was an instrumentality of the United States Government and was immune from State regulation of any kind, and that Delaware and National as agents of DPC were permitted to operate this intrastate railroad without let or hindrance of any kind from State, county or municipal officials.

DPC is a corporation wholly owned and created by the Reconstruction Finance Corporation under section 606b of title 15 of the United States Code. Its charter states its purposes and powers to be, *inter alia*, " to produce, acquire, carry, sell, or otherwise deal in strategic and critical materials as defined by the President; to purchase and lease land, purchase, lease, build, and expand plants, and purchase and produce equipment, facilities, machinery, materials, and supplies for the manufacture of strategic and critical materials, arms, ammunition, and implements of war * * * ". It has the right to adopt and use a corporate seal, make contracts, acquire and dispose of real and personal property, " and to sue and be sued in any court of competent jurisdiction." It is exempt from all taxation imposed by the United States or by any State, county, municipal or other local taxing authority " except that any real property of the Corporation shall be subject to State, Territorial, county, municipal or local taxation to the same extent according to its value as other real property is taxed "; and is entitled to the privileges and immunities belonging to it " as an instrumentality of the United States Government " presently to the same extent as granted to the Reconstruction Finance Corporation, the source thereof being the statute earlier mentioned under which Finance functions. National is a foreign corporation doing business under the laws of the State of New York; Delaware is a domestic corporation.

In *Arizona* v. *California* (283 U. S. 423) Congress authorized the Secretary of the Interior to construct on the Colorado River a dam, storage reservoir and hydroelectric plant for the purpose, among others, of controlling floods, improving navigation and regulating the flow of the river. The State of Arizona filed a bill of complaint against Ray Lyman Wilbur, Secretary of the Interior, and certain States of the Union, praying that the defendants be enjoined and restrained from continuing the project. The opinion states: " The United States may perform its functions without conforming to the police regulations of a State. [Citations.] If Congress has power to authorize the construction of the dam and reservoir, Wilbur is under no obligation to submit the plans and specifications to the State Engineer for approval. And the Federal Government has the power to create this obstruction in the river for the purpose of improving navigation if the Colorado River is navigable." (Pp. 451–452.) The national defense is a governmental purpose, and all acts in connection therewith are governmental functions and are not subject to State or local laws when performed by government officials or when so directed by Congress. The question is, whether this railroad may be built and operated under government immunity by the agents of a private corporation wholly owned and controlled by the Federal Government. " Congress may, of course, endow a governmental corporation with the government's immunity. But always the question is: has it done so? " (*Keifer & Keifer* v. *R. F. C.;* 306 U. S. 381, 389.) Again speaking of the Reconstruction Finance Corporation, the Supreme Court of the United States says: " It is managed by a board of directors appointed by the President by and with the advice and consent of the Senate. The Corporation has wide powers and conducts financial operations on a vast scale. While it acts as a governmental agency in performing its functions, * * * still its transactions are akin to those of private enterprises and the mere fact that it is an agency of the government does not extend to it the immunity of the sovereign." (*R. F. C.* v. *Menihan Corp.,* 312 U. S. 81, 83.)

In *Sloan Shipyards* v. *U. S. Fleet Corp.* (258 U. S. 549) defendant was a corporation wholly owned by the government and engaged in governmental work. It was created by a statute not different in this regard from that under which Reconstruction Finance operates. It was held not to enjoy governmental immunity for the reason that Congress had not specifically so enacted.

The portion of the New York State Labor Law which requires planking of beams in structural iron and steel work is applicable to a contractor and employer constructing a postoffice building on land belonging to the United States located in the city of New York. The work was a governmental function. (*Stewart & Co.* v. *Sadrakula,* 309 U. S. 94.) We do not now have to determine whether all the provisions contained in sections 21 and 89 of the Railroad Law, section 53 of the Public Service Law and section 52 of the Highway Law apply. It is enough if some of the provisions apply. In the opinion in the *Sadrakula* case just cited, it is stated: '' We do not agree, however, that because the Labor Law is not applicable as a whole, it follows that none of its sections are.''

The Supreme Court of the United States has determined in the *Keifer* and *Menihan* cases (*supra*) that corporations owned by the Reconstruction Finance Corporation and engaged in performing governmental functions do not enjoy governmental immunity under the acts of Congress. These holdings have direct application to this case, as all corporations owned and organized by the Finance Corporation have identical immunity under the Act of Congress authorizing the Finance Corporation to perform its functions through corporations formed by it. The Congress could, of course, grant immunity specifically and specially to DPC, but this it has not done, and DPC has only the immunity common to all Finance-formed corporations. No purpose would be served by further citation of analogous holdings. The application made by the Attorney-General under article 78 of the Civil Practice Act was proper, and should have been granted.

The order should be reversed on the law and facts, the petition reinstated and an order should be entered directing the defendants to apply in accordance, with the prayer of the petition.

HEFFERNAN and FOSTER, JJ., concur; BLISS, J., dissents; BREWSTER, J., taking no part.

Order reversed on the law and facts, petition reinstated and an order should be entered directing the defendants to apply to the Special Term in accordance with the prayer of the petition.