Kenneth R. FOWLER and Elizabeth K. Fowler, his wife, Plaintiffs,

v.

Truman M. DODSON, IV, and Truman M. Dodson, V, Defendants.

No. 22767.

United States District Court
E. D. Pennsylvania.

Feb. 11, 1958.

Joseph G. Feldman, Philadelphia, Pa., for plaintiffs.

Thomas Raeburn White, Jr., Edward Greeh, White, Williams & Scott, Philadelphia, Pa., for defendants.

KRAFT, District Judge.

This case is before the court on defendants' motion to dismiss for want of jurisdiction. The action arises from an automobile collision on July 22, 1956 in Shenandoah National Park in Virginia. All plaintiffs and defendants are citizens of Pennsylvania. Since diversity of citizenship is lacking, plaintiffs rely for jurisdiction upon the Act of August 19, 1937, § 1, as amended,[1] which, with its preamble, in pertinent part provides:

"In order to provide for uniform Federal jursdiction over * * * Shenandoah National Park, the provisions of the Act of the General Assembly of the Commonwealth of Virginia, approved April 1, 1940

1. 16 U.S.C.A. § 403c–1(g) (Supp.1957).

* * *, fixing and defining the respective jurisdiction and powers of the Commonwealth of Virginia and the United States and ceding to the United States exclusive police jurisdiction over all lands * * * within the park are hereby accepted and such exclusive jurisdiction is assumed by the United States over such lands. From June 5, 1942, the respective jurisdiction and powers of the Commonwealth of Virginia and the United States over all lands within the * * * Park * * * shall be as follows:

* * * * * *

"The courts of the Commonwealth of Virginia shall have concurrent jurisdiction with the courts of the United States of all civil causes of action arising on said lands *to the same extent as if the cause of action had arisen in the county or city in which the land lies outside of* the park area, * * *." (Emphasis supplied.)

Defendants contend that no jurisdiction of this action is conferred on this court by this statute. They assert that a district court is one of limited jurisdiction capable of exercise only when conferred by Congress under the Constitution and that this statute plainly relates to a retention of jurisdiction by the state courts, and was not intended to confer, by implication, any new or additional jurisdiction on district courts in civil causes of action. Defendants also urge that if this statute is construed to confer such additional jurisdiction on district courts, it cannot be constitutionally applied in this case unless the cause of action arose "under the laws of the United States" and that this case does not, by virtue of the Act of Febru-

ary 21, 1928, 16 U.S.C.A. § 457,[2] arise under the laws of the United States.

■ Lower federal courts do not receive their power to exercise jurisdiction directly from the Constitution. The Constitution is a limitation of the power of Congress to confer jurisdiction on lower federal courts. Cary v. Curtis, 1845, 3 How. 236, 44 U.S. 236, 11 L.Ed. 576; Sheldon v. Sill, 1850, 8 How. 441, 49 U.S. 441, 12 L.Ed. 1147.[3] A succinct statement of the principle appears in Kline v. Burke Construction Co., 1922, 260 U.S. 226, 233–234, 43 S.Ct. 79, 82, 67 L.Ed. 226:

"The effect of these provisions [Art. III, §§ 1 & 2] is not to vest jurisdiction in the inferior courts over the designated cases and controversies but to delimit those in respect of which Congress may confer jurisdiction upon such courts as it creates. Only the original jurisdiction of the Supreme Court is derived directly from the Constitution. Every other court created by the general government derives its jurisdiction wholly from the authority of Congress. That body may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution. * * * The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an act of Congress to confer it. * * *"

We think that the Act of Congress relied on by plaintiffs confers no jurisdiction on this court to hear and determine plaintiffs' cause of action.

■ The legislative history of this statute, though not determinative of the

2. "In the case of the death of any person by the neglect or wrongful act of another within a national park * * *, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be;

and in any action brought to recover on account of injuries sustained in any such place the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be."

3. See cases cited in Corwin, Constitution of the United States, 619 n. 3 (1952).

question, sheds some light on the intent of Congress. Prior to its 1942 amendment, the federal Act was designed to notify the Commonwealth of Virginia formally of the assumption of police jurisdiction over the Park by the United States, as contemplated by a 1928 Virginia statute ceding the Park lands, to enable the National Park Service of the Department of the Interior

"* * * effectively to administer the area by providing for the appointment of a United States Commissioner to hear and act upon complaints of violation of law or of the rules and regulations made by the Secretary of the Interior for the government of the park and for the protection of [wildlife] and objects of interest in the park. * * *" H.Rep.No. 1116, 75th Cong. 1st Sess. (1937).[4]

The purpose of the 1942 amendment was to reconcile questions relating to federal jurisdiction over the Park which arose from the following facts:

The 1928 Virginia Statute, ceding exclusive jurisdiction over the Park to the federal government, authorized such cession only as to Park land "conveyed" to the United States. There were lands in the Park title to which was vested in the United States by means other than conveyance. Hence, the United States had exclusive jurisdiction only as to "conveyed" lands and concurrent jurisdiction as to the remainder. To correct this situation, Virginia, in 1940, enacted a law which ceded to the United States, with certain reservations, exclusive criminal and police jurisdiction over the Park, but reserved concurrent civil jurisdiction.[5]

Congress apparently designed the 1942 amendment to § 403c–1 of the 1937 Act primarily to accept this cession formally in order to enable the administration of the laws and regulations applicable to the Park to be carried out more efficiently. H.Rep.No. 1795, 77th Cong.2d Sess. (1942).[6] Section 403c–1(g), upon which plaintiffs rely, appears to have been included in this amendment to acknowledge and accept Virginia's reservation of concurrent jurisdiction over civil causes of action and not to confer on district courts a new jurisdiction over civil actions merely because they arose within the Park. The latter conclusion does not appear expressly in the Report but is reasonably inferable therefrom. This conclusion is also supported by the fact that the language in 403c–1(g) was taken almost verbatim from the 1940 Virginia statute. It is reasonable to conclude that, having no power to confer jurisdiction on federal courts, Virginia, in enacting its own statute in the language later embodied by Congress in § 403c–1(g), intended only to preserve its traditional jurisdiction and, that Congress, in adopting the very language of the Virginia statute, intended no more.

■■ The limitations clause "to the same extent as if the cause of action had arisen in the county or city in which the land lies outside the park area, * * *" was intended, we think, to provide that concurrent federal and state jurisdiction in civil causes of action arising within that Park should be the same as, and not different from the concurrent federal and state jurisdiction over like causes arising in the same Virginia county outside the Park. Absent diversity this court would have no jurisdiction over this action if the collision had occurred outside the Park in the same county and, as we construe this statute, the occurrence of the collision within the Park effects no change. That the United States may acquire or confer a limited

---

4. Quotation from letter sent to the then Chairman of the House Committee on Public Lands by the Acting Secretary of the Interior, which letter was adopted by the Committee as its report.

5. Va.Code § 7–22 (1950).

6. The substance of the cited Report is a letter from the Secretary of the Interior, Harold Ickes, to the Chairman of the House Committee on Public Lands which was incorporated into the Report as explanatory of its purpose.

jurisdiction over causes of action arising on lands acquired by it from a state is clear. Stewart & Co. v. Sadrakula, 1940, 309 U.S. 94, at page 99, 60 S.Ct. 431, at page 433, 84 L.Ed. 596 wherein the court said:

"It is now settled that the jurisdiction acquired from a state by the United States whether by consent to the purchase or by cession may be qualified in accordance with agreements reached by the respective governments."

In this view of the case it is unnecessary to pass upon defendants' remaining contentions and, accordingly, we enter this

### Order

Now, February 11, 1958, defendants' motion is granted and plaintiffs' action is dismissed for want of jurisdiction.