Allen SYLVANE et al., Plaintiffs,

v.

William WHELAN, Director of the National Park Service; Cecil D. Andrus, Secretary, Department of the Interior; and the United States Department of the Interior, Defendants.

No. CV 80–0099.

United States District Court,
E. D. New York.

Feb. 4, 1981.

James J. Briody, Rockaway Park, N. Y., for plaintiffs.

E. R. Korman, U. S. Atty., E.D.N.Y. by Jan Constantine, Asst. U. S. Atty., Brooklyn, N. Y., for defendants.

## MEMORANDUM & ORDER

PLATT, District Judge.

With increasing regularity federal courts are being criticized by groups of irate citizens and/or by the media for acting or failing to act on problems which are within the province of the legislative and/or executive branches of our government but not within our jurisdiction. This case is no exception. Plaintiffs have come to us with a demand that we abate the alleged nuisance of nude bathing and sunning at Jacob Riis Park, part of the Gateway National Recreation Area located in the county of Queens, New York, although neither the Congress of the United States nor the Secretary of the Interior has enacted a law or promulgated a rule or regulation against the same.

It is, of course, not within the province of this Court to enact laws or to promulgate rules or regulations except as the latter may pertain to or affect our own courts and procedures.

With this preview and keeping in mind that there are at present no Federal or State laws or rules or regulations prohibiting nude sunbathing or nude bathing at Riis Park,[1] perhaps the balance of this opinion may be better understood.

---

1. Plaintiffs urge upon us the applicability of N.Y.Penal Law §§ 245.01 and 245.02, as well as New York City Administrative Code § 532–7.0. None of these sections covers the situation in the case at bar. § 245.01 and 245.02, involving exposure of a female, were directed at, and have been applied only to prohibition of "topless" waitressing. See N.Y.Penal Law § 245.-01, Practice Commentary; People v. Gilbert, 72 Misc.2d 795, 339 N.Y.Supp.2d 743 (1973). New York City Admin.Code § 532–7.0 is a local ordinance which prohibits nude swimming or bathing although, if read literally, not nude sunbathing. Plaintiffs contend it is made applicable to Gateway via the Assimilative Crimes Act, 18 U.S.C. § 13. However, the Act on its face, as well as its history and the case law under it, make it clear that only statewide criminal statutes, not local or municipal laws, are incorporated into federal law. See 18 U.S.C. § 13 and Revisor's Notes; U. S. v. Sharpnack, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282

## I

Plaintiffs are residents of several communities near or adjacent to Riis Park and represent various community organizations located therein. On July 1 and July 2, 1980, a hearing was held on plaintiffs' motion for a preliminary injunction. At that time serious doubts as to the jurisdiction of this Court were raised. The motion for a preliminary injunction was denied, with the understanding that the issue of subject matter jurisdiction remained open. The matter is now before the Court on defendants' motion pursuant to Fed.R.Civ.P. 12(b) to dismiss the complaint for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim on which relief may be granted. For the reasons stated below, we find that this Court lacks subject matter jurisdiction over this claim, and that the complaint must be dismissed.

Riis Park is part of the Gateway National Recreation Area. Gateway was created as a unit of the National Park Service in 1974, pursuant to Public Law 92–592, 86 Stat. 1308, 16 U.S.C. § 460cc (1972). Riis Park has long been a popular public beach with adjacent recreational facilities, owned prior to the creation of Gateway by the City of New York. The beach is divided by wooden jetties into units known as "bays". Various segments of the population have traditionally occupied certain bays in Riis Park; blacks, whites, teenagers, families, etc.,

each have established certain bays as their "domain". Bay 1 has long been frequented by members of the gay community and by nude sunbathers and nude bathers.

Between 1974 and August 1980, the State of New York had not ceded concurrent jurisdiction to the United States at Gateway. During that period of time the United States Park Service could only enforce federal law at Gateway. *See Paul v. United States*, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963). In an effort to control nudity at Riis Park, arrests were at times made by the Park Police under the federal disorderly conduct regulation, 36 C.F.R. 2.7.[2] Since that statute requires a showing of intent "to cause public inconvenience, annoyance or harm," prosecution of nude sunbathers and bathers merely for nudity in an area traditionally used as a nude beach was difficult. In view of this, the Park Service promulgated a regulation, 36 C.F.R. § 7.29, worded the same as the existing New York State Law, N.Y.Penal Code § 245.00 (McKinney 1980).[3] However, even that regulation requires proof of lewd, lascivious or obscene behavior, as opposed to mere nudity. It is this continued absence of Federal or State law prohibiting nude bathing that led to the instant lawsuit.[4]

In the original posture of this case plaintiffs sought damages for lost property values they believed they sustained as a result of the activities at Riis Park, and also sought an order from this Court requiring the defendant Secretary of the Interior to

---

(1958); *U. S. v. Marcyes*, 557 F.2d 1361 (9th Cir. 1977); *U. S. v. Prejean*, 494 F.2d 495 (5th Cir. 1974).

**2.** 36 C.F.R. 2.7 reads as follows:
Disorderly conduct.
(a) Disorderly conduct is prohibited.
(b) Offense defined. A person is guilty of disorderly conduct if, with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he shall:
(1) Engage in fighting or in threatening, violent, or tumultuous behavior; or
(2) Make unreasonable noise or offensively coarse utterance, gesture, or display, or address abusive language to any person present; or

(3) Create a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

**3.** N.Y.Penal Law § 245.00 provides:
"A person is guilty of public lewdness when he intentionally exposes the private and intimate parts of his body in a lewd manner or commits any other lewd act (a) in a public place, or (b) in private premises under circumstances in which he may readily be observed from either a public place or from other private premises, and with intent that he be so observed."
The Park Service has since August 1, 1979, prosecuted violators under this section where bathers have in fact engaged in lewd conduct beyond mere nude sunbathing or nude bathing.

**4.** See Footnote 1, *supra*.

promulgate regulations prohibiting nude bathing at Riis Park.

Following the hearing on the preliminary injunction, several changes both in the law and in this litigation arose which substantially affect this Court's jurisdiction to entertain this suit. First, effective August 4, 1980 the State of New York has ceded to the United States concurrent jurisdiction for law enforcement services in Gateway, reserving to the State complete jurisdiction over all matters other than law enforcement. *See* Certificate of Cession of Concurrent Jurisdiction, May 15, 1980, James C. Shea, Comm'r of General Services, at p. 3. Second, plaintiffs, perhaps realizing that neither this Court nor any other has the power to order the promulgation of regulations or legislation, have withdrawn both that prayer for relief and their claim for monetary damages, and instead seek an injunction to abate what they consider to be a public nuisance.

## II

The only paragraph in the complaint that approaches a jurisdictional allegation is that "this action involves a controversy between the plaintiffs, as citizens of the United States and the defendants as representatives of the United States Government." Complaint, ¶ 3. In the course of the hearing and in their brief, plaintiffs have posited jurisdiction variously on 28 U.S.C. § 1331(a), on the Federal Tort Claims Act, 28 U.S.C. § 1346(b), § 2674 *et seq.*, and on the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*

■ At the outset, we may dispose of the more patently inapplicable bases of jur-

isdiction. The Tort Claims Act allows recovery of money damages only and affords no right to injunctive relief against the federal government. 28 U.S.C. § 1346(b). Even assuming all the requisites for suit under the Tort Claims Act have been met (which is not the case because, *inter alia*, plaintiffs have never filed a notice of claim), the amendment in plaintiffs' prayer for relief proves fatal to a claim of jurisdiction based on that statute. Nor can the Administrative Procedure Act without more support jurisdiction in this case. The Supreme Court has held that the APA is not an independent source of subject matter jurisdiction permitting federal judicial review of agency action or inaction. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

## III

■ It appears therefore that the only possible basis for subject matter jurisdiction is the general "federal question" statute, 28 U.S.C. § 1331.[5] Plaintiffs do not claim that this suit arises under the Constitution or under the laws of the United States in the legislative sense of the word "laws." Despite the above quoted "jurisdictional allegation" in plaintiffs' complaint, the mere fact that the suit is against federal officials does not provide federal question jurisdiction. *National Indian Youth Council v. Morton*, 363 F.Supp. 475 (D.Okla.1973). Rather, although it is unclear from the briefs filed, plaintiffs wish us to assume jurisdiction based either on the federal common law of nuisance or upon the notion of a "federalized" state common law of nuisance which plaintiffs contend should apply in a federal enclave within a state.[6] Plaintiffs

---

5. Plaintiffs have also asserted, in a footnote in their brief, that jurisdiction can also be predicated on diversity of citizenship, 28 U.S.C. § 1332. This jurisdictional basis was never pleaded. Moreover, beyond a form affidavit signed by a real estate broker submitted with plaintiffs' reply brief stating in conclusory fashion that "many of the homes in proximity to Bays 1 and 2 ... have suffered a loss of more than $10,000.00," plaintiffs have not proved that the $10,000 amount-in-controversy requirement has been met as to each plaintiff. No proof was offered at the hearing. Furthermore, since the suit is against a federal agency, and two federal officials in their official capaci-

ty, it is in effect a tort action against the United States, for which diversity jurisdiction will not lie. *See T. M. Systems, Inc. v. United States*, 473 F.Supp. 481 (D.Conn.1979); *Jizmerjian v. Department of Air Force*, 457 F.Supp. 820 (D.S. C.1978).

6. There is little, if any, practical distinction between these two approaches. Were we to sustain jurisdiction on the federal common law of nuisance, that law would essentially derive from an application of the law of the forum state. *See Illinois v. City of Milwaukee*, 406 U.S. 91, 103 n. 5, 92 S.Ct. 1385, 1392 n. 5, 31 L.Ed.2d 712 (1972).

pose the question thusly: "[h]ow this Court . . . insofar as Federal jurisdiction depends upon the presence of a Federal question, finds the Federal question element, if what it is being asked to enforce is simply state law *as* state law (i. e., New York State's law on abatement of nuisance)." Plaintiffs' Memorandum of Law at p. 25. The simple answer is that we do not find any "Federal question element" in this case, and it therefore must be dismissed.

In *Illinois v. City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), the Supreme Court was faced with the problem of finding a basis for federal jurisdiction over a suit by a state against a city in a sister state to abate pollution of interstate waterways. After finding that the suit was not properly within the original jurisdiction of the Supreme Court, 406 U.S. at 93–98, 92 S.Ct. at 1387–1390, nor subject to diversity jurisdiction under 28 U.S.C. § 1332(a), *id.* at 98–99, 92 S.Ct. at 1390–1391, the Court held that jurisdiction was maintainable under the doctrine of a federal common law of nuisance. That decision made it clear that it is a prerequisite to a court's invocation of the federal common law that there exist either an overriding federal interest or the need for a uniform federal rule of decision in regard to the subject matter of the lawsuit. 406 U.S. at 105, n. 6, 92 S.Ct. at 1393, citing *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964). It seems to us implicit in that caveat that the Court recognized that were questions pertaining to matters essentially local in character to be litigated in federal court under the "federal common law" where only the thinnest federal interest appeared, fundamental notions of federalism would be impaired. In *Illinois v. City of Milwaukee, supra,* the Court found substantial federal interests both in the evidence of a Congressional intent to control interstate pollution on a national scale through a complicated network of legislation and in the need for a uniform rule of law governing the maintenance of interstate waterways. Although the extent of the federal common law is as

yet undetermined, both the Supreme Court and lower courts have consistently confined the action to cases involving interstate waters. *See, e. g., Vermont v. New York*, 417 U.S. 270, 94 S.Ct. 2248, 41 L.Ed.2d 61 (1975); *Reserve Mine Co. v. EPA*, 514 F.2d 492 (8th Cir. 1975); *Michie v. Great Lakes Steel Division*, 495 F.2d 213 (6th Cir. 1974); *Board of Supervisors of Fairfax County, Virginia v. United States*, 408 F.Supp. 556 (E.D.Va.1976).

This Circuit had occasion recently to further delineate the scope of the application of the federal common law as sustaining § 1331 jurisdiction. In *In re "Agent Orange" Product Liability Litigation*, 635 F.2d 987 (2d Cir. 1980), the Court reversed the decision of the District Court that an action by veterans against five chemical companies for injuries sustained as a result of the government's use of the chemical known as "Agent Orange" during the Vietnam war was maintainable in federal court under federal common law. In that case, despite the fact that servicemen from the fifty states were affected, that suits in some thirty districts had been filed, that defendants were five of the largest chemical companies in the country, that plaintiffs' injuries were sustained as a result of the defense of national policy, and that by the very establishment of the Veterans Administration Congress has implicitly taken responsibility for post-military service matters concerning veterans, the Court found the federal interest in the litigation too slim to justify usurpation of the states' traditional control over what was deemed essentially tort law.

In the "Agent Orange" opinion, the Court did adopt the District Court's three-factor test to determine when to apply federal common law. These criteria are 1) the existence of a substantial federal interest in the outcome of litigation; 2) the effect on this federal interest should state law be applied; and 3) the effect on state interests should state law be displaced by federal common law. *In re "Agent Orange" Product Liability Litigation, supra* at 990. We

need go no further than to examine the first factor in light of the facts in the case at bar to determine that this is not the proper case to expand jurisdiction under the federal common law.

 It is elementary tort law that the question of whether a given activity constitutes a nuisance cannot be answered without addressing the further questions of where the activity is taking place, when, by what actors and affecting whom. *See* W. Prosser, *The Law of Torts*, Ch. 15 (4th ed. 1971). And, geared more particularly to this case, what is or is not moral or decent cannot be judged without reference to the standards of the community with its own peculiar set of sociological norms and sexual mores. In the related field of obscenity, by virtue of several significant Supreme Court cases, it has become the standard litany that obscenity is to be judged against the sentiments of the average person in a locality applying contemporary community standards. *See Jenkins v. Georgia*, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974); *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590, *rehearing denied* 419 U.S. 885, 95 S.Ct. 157, 42 L.Ed.2d 129 (1974); *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). It seems clear that whether nude bathing constitutes a public nuisance is, like obscenity, local rather than national in character. The fact that it occurs on land to which the federal government holds title does not change this. Plaintiffs have pointed to no identifiable federal policy at stake in this lawsuit that satisfies the first level of the three part test. Indeed it would be preposterous in light of the "Agent Orange" case, which is, in the words of Judge Feinberg in dissent, "[t]o the non-legal mind . . . so patently of national scope and concern," *In re "Agent Orange"*, supra at 996, for us to hold that the state of dress or undress of New York beachgoers presents so significant a federal question as to warrant the creation of federal common law rules.

Not only is there no federal interest in the substantive rule that might result from this case, but there is likewise no need procedurally for a uniform rule of law to emerge here such as was contemplated in *Illinois v. City of Milwaukee, supra.* On the contrary, we have indicated above the undesireability of establishing federal precedent in a case such as this. Moreover, under these circumstances federal common law would most likely be derived from the law of the state in which the court is sitting. Thus, a decision on the merits in this case issuing from the federal bench would have the effect of making New York's cultural and sociological standards national policy. It hardly needs to be pointed out that what may be either acceptable or prohibited behavior on a federal beach in New York may not be so in a federal enclave in California, in a national park in the Midwest, or on a federal forest preserve in the South.

## IV

 Having determined that this case is not the vehicle for expansion of federal common law jurisdiction, we turn to plaintiffs' contention that the Court should predicate jurisdiction on the concept of "federalized" state law in a federal enclave. This doctrine was expounded by the Supreme Court in *Stewart & Co. v. Sadrakula*, 309 U.S. 94, 60 S.Ct. 431, 84 L.Ed. 596 (1940), and was discussed at length in *Board of Supervisors of Fairfax County, Virginia v. United States, supra,* a case in which the Board sought to enjoin the alleged public nuisance created by the presence of a federal penitentiary by suit against the federal authorities under § 1331 jurisdiction. The Court in *Fairfax* synthesized the doctrine as follows:

1) once jurisdiction over land is ceded to the federal government, federal law governs all actions relating to the land; 2) unless and until Congress passes legislation relating to the property, state law in existence at the time of cession is assimilated into the federal common law governing the enclave.

408 F.2d at 563. The purpose of this doctrine is to "assure[ ] that no area however small will be left without a developed legal system for private rights." *Stewart & Co. v. Sadrakula*, 309 U.S. at 100, 60 S.Ct. at 434. In other words, where the federal

government acquires land within a state and exercises jurisdiction over that land, unless state law in existence at the time of acquisition is "federalized" a hiatus in the legal system in the federal enclave would occur.

■ However, there are situations, as in *Fairfax* and in the case at bar, where the state may qualify its cession of land to the federal government by the reservation of concurrent jurisdiction. *See James v. Dravo Construction Co.*, 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937). Once the state cedes concurrent jurisdiction (in this case, indeed, reserving unto itself exclusive civil jurisdiction) the rationale for applying "federalized" state law as the basis for § 1331 jurisdiction disappears. As noted in the *Fairfax* case, once concurrent state jurisdiction exists, "litigants are afforded a forum with a developed legal system in which to resolve disputes." 408 F.Supp. at 564. The Fourth Circuit adopted this rationale in *Pratt v. Kelly*, 585 F.2d 692 (4th Cir. 1978), in holding that federalized state law does not apply in a negligence suit arising from an automobile accident on federal land over which the state had concurrent jurisdiction. Indeed we have been unable to discover any instance in which the doctrine was invoked in a federal enclave over which the state has reserved concurrent jurisdiction. In short, since an action to abate a public nuisance arises under local law, and since there are courts well equipped to entertain such an action, there is no reason for a federal court to apply substantive state rules and deem them to be federal to support otherwise unmaintainable jurisdiction under 28 U.S.C. § 1331.[7]

### V

In view of the foregoing, defendants' motion to dismiss the complaint for lack of subject matter jurisdiction must be, and is hereby granted.

SO ORDERED.

7. Plaintiffs ask in their briefs whether the contention by defendants that this suit should be brought in State court amounts to a waiver by defendants of their immunity from suit in State court. This is, of course, not the case. Rather, in view of the cession of concurrent jurisdic-

tion, the State courts may provide plaintiffs with an appropriate forum for the relief (on the basis of the common law) which they seek from the State or its officials who concededly have reserved exclusive civil jurisdiction unto themselves.