**STATE OF HAWAII**, Plaintiff–Appellee, v. **RICHARD L. THOMAS**, Defendant–Appellant

NO. 14432

(FC–CR NO. 89–3520)

APRIL 29, 1991

BURNS, C.J., HEEN, AND TANAKA, JJ.

## OPINION OF THE COURT BY HEEN, J.

Defendant–Appellant Richard L. Thomas (Thomas) appeals his bench trial conviction of Abuse of Family and Household Members. Hawaii Revised Statutes (HRS) § 709–906(1) (1985).[1] We affirm.

### I.

The incident in question took place at 6808 110th Street, in a military housing unit on the Puuloa Naval Reservation at Iroquois Point, Oahu.[2] In a complaint filed in First Circuit Family Court, Thomas was charged with hitting his wife, Jozan Thomas (Jozan), on the head on June 13, 1989, causing her face to hit the corner of a kitchen cabinet.[3] The contact with the cabinet caused a cut on Jozan's face.

On the day of trial, before any witnesses were called, Thomas' attorney made an oral motion for informal adjustment pursuant to

---

[1] Hawaii Revised Statutes (HRS) § 709–906(1) (1985) reads as follows:

**Abuse of family and household members; penalty.** (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member, or to refuse compliance with the lawful order of a police officer under subsection (4). The police, in investigating any complaint of abuse of a family or household member may, upon request, transport the abused person to a hospital or safe shelter.

For the purposes of this section, "family or household member" means spouses or former spouses, parents, children, and persons jointly residing or formerly residing in the same dwelling unit.

[2] The Puuloa Naval Reservation is contiguous to Pearl Harbor Naval Base.

[3] HRS § 571–14(2)(B) (1985) vests exclusive original jurisdiction in the Family Court to try any adult charged with a non–felony offense against his or her spouse.

HRS § 571–42 (1985).[4] Jozan testified at a hearing on the motion that she favored informal adjustment; she did not want Thomas to go to jail, since they had young children. The State argued vigorously against the motion.

Thomas' attorney then argued that the State is not a "party in interest" under HRS § 571–42, and, since Thomas and Jozan, the parties in interest, wanted informal adjustment, the motion should be granted. The State argued that, since it was prosecuting the case against Thomas, it was a party in interest.

The trial judge, emphasizing the discretionary nature of HRS § 571–42, denied the motion, stating that the facts of the case did not support an informal adjustment. The trial judge also stated that he would have denied the motion even if the State had agreed with Thomas and Jozan.

The case then proceeded to trial. After the State rested its case, Thomas' attorney moved for a judgment of acquittal as to the June 13, 1989 incident,[5] arguing that the case "should have been in Federal court, Your Honor. There's no State jurisdiction on Federal land for that incident." The trial judge, noting that Thomas had cited no authority for the argument, denied the motion.

Following a recess, Thomas' attorney renewed the motion "on the military property issue." She questioned whether Hawaii's

---

[4] HRS § 571–42 (1985) reads in pertinent part as follows:

**Procedure in adult cases.** In any criminal proceeding arising under section 571–14 the court, with the consent of the defendant or the parties in interest, may make a preliminary investigation and such adjustment as is practicable, without prosecution.

Informal adjustment is akin to probation. *See State v. Dunn*, 8 Haw. App. 238, 798 P.2d 908 (1990).

[5] Thomas was also tried in the same proceeding on a separate complaint for striking his wife on June 25, 1989. This incident did not take place on any military installation. Thomas was acquitted of this second charge.

penal code, made applicable by HRS § 701–106 (1985)[6] to "the land and water and the air space about the land and water with respect to which the State has legislative jurisdiction," could be enforced at Iroquois Point. Once again, the trial judge denied the motion. The trial judge agreed with the State's position that "there appears to be overlapping jurisdiction" at Iroquois Point.

Following Thomas' defense, his attorney renewed the jurisdiction argument, again to no avail. The trial judge found Thomas guilty, but stayed the execution of the sentence pending this appeal.

## II.
## The Motion For Informal Adjustment

Thomas asserts that the trial judge erred in determining that the State is a party in interest to the motion for informal adjustment under HRS § 571–42 and that the State's consent was necessary to a granting of such a motion. The argument does not reflect the court's action.

During the informal adjustment hearing, the trial judge stated:

> I do want to list for the record that it has been the practice of this Court to require the State to agree and that it is a party in interest.

The trial judge also noted that he has, in other cases, denied informal adjustment motions even when the State agreed with the

---

[6] HRS § 701–106 (1985) reads in pertinent part as follows:

**Territorial applicability.** (1) Except as otherwise provided in this section, a person may be convicted under the law of this State of an offense committed by his own conduct or the conduct of another for which he is legally accountable if:

(a) Either the conduct or the result which is an element of the offense occurs within this State[.]

motion.[7] The trial judge did not decide whether the State was a party in interest and did not require the State's consent. The trial judge merely stated the court's practice. He did not state that the practice was being followed in this case.

Informal adjustment under HRS § 571–42 is clearly addressed to the discretion of the trial court. Thomas does not argue that the trial judge abused his discretion, and our review of the record reveals no abuse.[8]

### III.
### Jurisdiction

Thomas contends that the Puuloa Naval Reservation is under the exclusive jurisdiction of the United States; therefore, the State had no power to try him.[9] The argument is without merit.

To support his position, Thomas relies on § 16(b) of the Hawaii Statehood Act,[10] which reads:

Notwithstanding the admission of the State of Hawaii into the Union, authority is reserved in the United States, subject to the proviso hereinafter set forth, for the exercise of the Congress of the United States of the power of exclusive legislation,[11] as provided by article I, section 8,

---

[7] It should be noted that the family court has also granted such motions over the State's objection. *See State v. Dunn, supra.*

[8] We find no merit in Thomas' argument that the State's participation "tainted" the informal adjustment hearing.

[9] "While exclusive federal jurisdiction attaches, state courts are without power to punish for crimes committed on federal property." *James Stewart & Co. v. Sadrakula,* 309 U.S. 94, 101, 60 S. Ct. 431, 434, 84 L. Ed. 596, 601 (1940).

[10] Act of Mar. 18, 1959, Pub. L. No. 86–3, 73 Stat. 4.

[11] "Exclusive legislation" is synonymous with "exclusive jurisdiction." *James v. Dravo Contracting Co.,* 302 U.S. 134, 58 S. Ct. 208, 82 L. Ed. 155 (1937).

clause 17, of the Constitution of the United States, in all cases whatsoever over such tracts or parcels of land as, immediately prior to the admission of said State, are controlled or owned by the United States and held for Defense or Coast Guard purposes, whether such lands were acquired by cession and transfer to the United States by the Republic of Hawaii and set aside by Act of Congress or by Executive order or proclamation of the President or the Governor of Hawaii for the use of the United States, or were acquired by the United States by purchase, condemnation, donation, exchange, or otherwise: Provided, (i) That the State of Hawaii shall always have the right to serve civil or criminal process within the said tracts or parcels of land in suits or prosecutions for or on account of rights acquired, obligations incurred, or crimes committed within the said State but outside of the said tracts or parcels of land; (ii) that the reservation of authority in the United States for the exercise by the Congress of the United States of the power of exclusive legislation over the lands aforesaid shall not operate to prevent such lands from being a part of the State of Hawaii, or to prevent the said State from exercising over or upon such lands, concurrently with the United States, any jurisdiction whatsoever which it would have in the absence of such reservation of authority and which is consistent with the laws hereafter enacted by the Congress pursuant to such reservation of authority; and (iii) that such power of exclusive legislation shall vest and remain in the United States only so long as the particular tract or parcel of land involved is controlled or owned by the United States and used for Defense or Coast Guard purposes: Provided, However, That the United States shall continue to have sole and exclusive jurisdiction over such military

installations as have been heretofore or hereafter determined to be critical areas as delineated by the President of the United States and/or the Secretary of Defense.

48 U.S.C.S. note preceding § 491, at 88 (Law. Co–op. 1981) (footnote added).

Thomas argues that, under § 16(b)(iii), the United States has exclusive legislative jurisdiction over the Puuloa Naval Reservation. The State counters that § 16(b)(ii) grants concurrent jurisdiction over the area to the United States and Hawaii.

The legislative history of § 16(b) indicates that it was the intent of Congress to accord to the state concurrent jurisdiction with the federal government over lands in Hawaii owned or controlled by the federal government at the time of Hawaii's admission as a state.

Subsection (b) reserves to Congress the right to exercise its power of exclusive legislation over lands which, immediately prior to admission of Hawaii into the Union are owned or controlled by the United States and held for defense or Coast Guard purposes. The State is authorized, however, to serve process on these lands and, *until Congress acts to exercise its reserved power, to exercise all of its other usual functions in the area.* The Federal power of exclusive legislation expires when the area ceases to be used for defense or Coast Guard purposes. Notwithstanding other provisions of this subsection, the United States will have sole and exclusive jurisdiction over any military installations that are determined to be critical areas by the President or the Secretary of Defense. The term 'defense purposes' is used in the bill to cover military, naval, and Air Force purposes.

S. Rep. No. 80, 86th Cong., 1st Sess., *reprinted in* 1959 U.S. Code Cong. & Admin. News 1346, 1365 (emphasis added). We take judicial notice of Civil No. 502, *United States v. 877.373 Acres of*

*Land, More or Less, at Iroquois Point, Pearl Harbor, Oahu, Territory of Hawaii*, filed in the District Court of the United States for the District of Hawaii on December 29, 1944, in which the federal government sought to acquire the lands at Iroquois Point. Rule 201(d), Hawaii Rules of Evidence (1981). The Order and Judgment Vesting Title was entered on September 8, 1949. Thus, the lands at Iroquois Point were owned by the federal government immediately prior to Hawaii's admission as a state.

As Thomas has not referred us to, and we have not found, any authority indicating that Congress has ever acted to exercise its reserved powers under § 16(b),[12] nothing in the three provisos prevents the state from exercising concurrent jurisdiction over military properties in Hawaii.

We note that the very last proviso in § 16(b) holds that if the President and/or Secretary of Defense determines that a military installation in this state is a "critical area," then the United States would have exclusive jurisdiction over the land within the installation. Again, we are not aware that such a determination has been made. Although there is some authority indicating that Pearl Harbor and its surrounding contiguous federal lands have been declared "vital" to the national defense of the country,[13] we decline, without more, to hold that such a declaration is the equiva-

---

[12] A reservation of power by Congress upon the admission of a territory as a state in the Union is one method by which the United States can obtain jurisdiction over land it owns or controls in that state. *Fort Leavenworth R.R. v. Lowe*, 114 U.S. 525, 5 S. Ct. 995, 29 L. Ed. 264 (1885). *See Surplus Trading Co. v. Cook*, 281 U.S. 647, 50 S. Ct. 455, 74 L. Ed. 1091 (1930). Ownership and use of the land, without more, do not withdraw the land from the jurisdiction of the state in which it sits. *James v. Dravo Contracting Co.*, 302 U.S. 134, 58 S. Ct. 208, 82 L. Ed. 155 (1937).

[13] *See* Exec. Order No. 8143, 3 C.F.R. 504–05 (1938–1943); 32 C.F.R. §§ 761.2(a) (1990), 761.2(b) (1990), 761.3(a) (1990), 761.4(d) (1990), 770.27(a) (1990), 770.26(a) (1990), and 770.31(a)(14) (1990). *See also* 18 U.S.C.S § 795 (Law. Co–op. 1979); Exec. Order No. 10104, 3 C.F.R. 298–99 (1949–1953).

lent of the determination required in the last proviso of § 16(b). *See Silas Mason Co. v. Tax Comm'n*, 302 U.S. 186, 58 S. Ct. 233, 82 L. Ed. 187 (1937). Absent a concrete pronouncement by the federal government that it desires or requires exclusive jurisdiction over the land at Iroquois Point, we must give effect to the concurrent jurisdiction established by § 16(b).

### IV.

Lastly, Thomas argues that the State did not prove jurisdiction as required by HRS § 701–114(1)(c) (1985), which reads:

> **Proof beyond a reasonable doubt.** (1) Except as otherwise provided in section 701–115, no person may be convicted of an offense unless the following are proved beyond a reasonable doubt:
>
> * * *
>
> (c) Facts establishing jurisdiction[.]

Thomas' argument is flawed. The State proved that the crime in question took place on the Puuloa Naval Reservation. That was sufficient proof of jurisdictional facts under the statute. Whether the locus of the crime gives the court jurisdiction to hear the case is a question of law for the court to determine from proof of the fact of the locus. *See State v. Schumann*, 111 N.J. 470, 545 A.2d 168 (1988).

Affirmed.

*Theodore Y. H. Chinn*, Deputy Public Defender, for Defendant–Appellant.

*Charlotte Jean Duarte*, Deputy Prosecuting Attorney, City and County of Honolulu, for Plaintiff–Appellee.